THISTLETHWAITE ET AL *v.* THE STATE.

[No. 18,264.   Filed January 27, 1898.]

MUNICIPAL CORPORATIONS. — *Ordinance.* — *Amendment.* — *Repeal.* — Where there is an ordinance regulating the prices to be charged by companies furnishing natural gas to consumers, a subsequent amendatory ordinance which increases the price to be charged by a particular company for a certain time, does not repeal the prior ordinance, and, on the expiration of the time, the prior ordinance controls.   *pp. 319-323.*

CONTEMPT.—*Violation of Injunction.—Defense.*—Where a gas company violates an order of a court of equity, enjoining it from charging consumers more than a specified sum for gas, it is no defense to a prosecution for contempt, that the officers of the company acted in good faith, and without any intention of violating an order of the court.   *pp. 324, 325.*

From the Hamilton Circuit Court.   *Affirmed.*

*T. J. Kane, R. K. Kane,* and *Christian & Christian,* for appellants.

*Stephenson, Shirts & Fertig,* and *Robert Denny,* for State.

MONKS, J.—Appellants were fined for contempt of court, for taking, charging, and demanding more for the use of natural gas than the maximum amount fixed by an ordinance of the town of Westfield, in violation of an injunction of said court.   It appears from the record that in an action brought in the Hamilton Circuit Court by Mendenhall and Denny, residents and consumers of natural gas in the town of Westfield, on behalf of themselves and all other gas consumers of said town, against the Westfield Gas and Milling Company, a final decree was entered in June, 1894, perpetually enjoining said gas company, its assignees, grantees, and successors, from taking, charging, demanding, or collecting more than eighty cents per month for the use of natural gas in cook or kitchen

stoves in said town, the same being the maximum rate fixed by section seven of an ordinance of said town passed January 4, 1889, and from/raising or increasing the monthly or yearly charges for such stoves above eighty cents per month, the maximum rate as aforesaid. From this decree an appeal was prosecuted by said gas company to this court, and the said judgment was on November 19, 1895, affirmed. *Westfield Gas and Milling Co.* v. *Mendenhall*, 142 Ind. 538. While said appeal was pending in this court the Westfield Gas and Milling Company and the town of Westfield, for the purpose of compromising all questions in said injunction proceedings, entered into an agreement which provided that the town of Westfield was to pass a new ordinance regulating the price for which gas should be furnished in said town, increasing the maximum price for cook stoves to $1.25 per month, and also that one-half of the costs in the injunction suit pending on appeal in this court should be paid by said gas company, and the other one-half by the citizens of said town. Afterwards, in accordance with the terms of said agreement, the board of trustees of said town, on November 1, 1895, passed an ordinance fixing the maximum rates to be charged by the Westfield Gas and Milling Company to consumers in said town, for the period of eleven months from November 1, 1895. The enacting clause of said ordinance was as follows: "Be it enacted by the trustees of the town of Westfield, that so much of section seven of an ordinance passed and dated January 4, 1889, regulating the prices to be charged for the use of natural gas for heating and illuminating purposes by the Westfield Gas and Milling Company shall be amended, and the following prices substituted for a period of eleven months from November 1, 1895."

The body of the act provided what the rates should

be per month from "November 1st, 1895, until May 1st, 1896," and what the rates should be from "May 1st, 1896, until October 1st, 1896," thus in express terms, fixing the rates only for eleven months.

Said gas company, after the passage of said ordinance, charged and collected from consumers of natural gas the maximum rates fixed by said ordinance, until February 8, 1896.

In February, 1896, one of the appellants, the Westfield Gas Company, succeeded by purchase to the rights and franchises of said Westfield Gas and Milling Company, and said appellants, from that date until the commencement of this action, in December, 1896, with a full knowledge of said injunction, demanded and received rates for gas in excess of the rates fixed by section seven of said ordinance and by said injunction.

On October 1st, 1896, the eleven months fixed by said ordinance, during which the increased rates could be charged, expired, and negotiations were opened between the board of trustees of said town and the Westfield Gas Company, relative to the rates to be charged for gas by the said company in the future. That as a result of said negotiations, a resolution in writing was passed by the board of trustees of said town in these words: "Resolved, that the Westfield Gas Company be and hereby is authorized to charge and collect from consumers of natural gas in the town of Westfield, for the month of October, 1896, the same rates fixed in the ordinance of November 1, 1895, amending for eleven months, section seven of the ordinance of January 4, 1889."

And it was further agreed that if said company would drill wells and make provision to furnish an adequate supply of gas to its consumers in said town, said ordinance of November 1, 1895, should be contin-

ued in effect.    That the Westfield Gas Company after-
ward completed a number of wells and fully complied
with said agreement, but no ordinance was passed by
said town as provided in said agreement.

It is not claimed by appellants that said last oral
agreement made between the Westfield Gas Company
and said board of trustees on October 1, 1896, for the
continuation of the increased rates of gas, was binding
on the town.    It is clear that the board of trustees had
no power to make such a contract.

Appellants insist that the ordinance passed Novem-
ber 1, 1895, increasing the maximum rates to be
charged for the use of natural gas for eleven months
from that date, entirely abrogated section seven of the
original ordinance, as passed January 4, 1889, and
that after the expiration of said eleven months, if
said limitation was valid, there was no restriction
upon the rates to be charged for the use of natural
gas, but, if said limitation of eleven months was void,
the maximum rates to be charged were those fixed by
said ordinance adopted November 1, 1895.

It will be observed that the ordinance of November
1, 1895, only provided the rate to be charged by the
Westfield Gas and Milling Company, while section
seven of the original ordinance fixed the rates to be
charged by all corporations and persons furnishing
natural gas to consumers in the town of Westfield.

It is clear, we think, from the language of the ordi-
nance passed November 1, 1895, that the board of trus-
tees did not intend to repeal section seven of the or-
dinance of January 4, 1889.    The clause "for the
period of eleven months," and the word "substitute,"
in the enacting clause of said ordinance, qualifies the
word "amend;" and it is evident that it was the inten-
tion of the town board that the price named in said
ordinance should affect only said gas company, and

control only from November 1, 1895, to October, 1896, a period of eleven months, and that from and after that day the rates fixed by section seven of the original ordinance should control.

The resolution adopted by the board of trustees on October 1, 1896, expressly declares that "The same rate fixed by the ordinance of November 1, 1895, amending for eleven months section seven of the ordinance of January 4, 1889," thus clearly showing that said ordinance of November 1, 1895, was not understood or intended to amend section seven of the ordinance of 1889, in the ordinary sense of that word, but only to provide a temporary schedule of rates for the period named.

Appellee contends, however, that the contract between the Westfield Gas and Milling Company and the town of Westfield, compromising all questions involved in said injunction suit, was illegal and void, for the reason that the town of Westfield was not a party to the said injunction suit, and had no power to compromise the case, much less to agree that the citizens of the town should pay one-half of the costs; and that the ordinance of November 1, 1895, increasing the maximum prices for natural gas, passed in pursuance of said agreement, was also void; and that said ordinance was void for the further reason that the same was not a general ordinance, fixing the price of gas generally, but only the prices to be charged by the Westfield Gas and Milling Company.

It is probably true as claimed by appellee, that the board of trustees had no power to compromise said injunction case or to agree to pay any part of the costs thereof, or that the citizens of the town should pay any part thereof, and that such contract was invalid; but it is not necessary to decide whether or not said ordinance was void for the reasons urged by the ap-

pellee, because, even if said ordinance was valid, it only continued in force until October 1, 1896, and even if continued until November 1, 1896, by the resolution adopted October 1, 1896, the same was not in force during the month of November, 1896, during which time it is admitted that appellants charged and collected rates for cook stoves in excess of eighty cents per month, which was prohibited by said injunction. It is evident that appellants violated the said injunction during the month of November,1896,if not before.

Appellants, in their answer to the rule to show cause, alleged "that, all and singular, the acts charged against them were done in perfect good faith, and in full reliance upon said agreement and ordinance and resolution, believing that said Westfield Gas Company had a right to act thereunder as it did; and the same was done without any intention to violate any order, or to be in contempt of said court."

Appellants insist that this proceeding is under section two of the act of 1879, being section 1019, Burns' R. S. 1894 (1007, Horner's R. S. 1897), and that they were entitled to be discharged upon said answer under the provisions of section 9 of said act, being section 1025, Burns' R. S. 1894 (1013, Horner's R. S. 1897).

This, however, is a proceeding against appellants for contempt, to enforce a civil right and remedy; and it is expressly provided by section 10 of said act, as amended (Acts 1881, p. 10), being section 1026, Burns' R. S. 1894 (1014, Horner's R. S. 1897), that said act does not apply to proceedings of this kind.

The Hamilton Circuit Court had the inherent power to punish appellants for contempt for violating said injunction. In such proceeding appellants could not purge themselves by alleging in their answer that they acted in good faith, and without any intention of violating said order of the court. The rights of the

parties who obtained said injunction cannot be defeated in this way. Whether or not appellants were guilty of contempt did not depend on their intention, but upon the acts done by them. *Hawkins* v. *State,* 126 Ind. 294; *Dodge* v. *State,* 140 Ind. 284, 288; *Thompson* v. *Pennsylvania R. R. Co.,* 48 N. J. Eq. 105, 21 Atl. 182, and cases cited; *Wilcox Silver Plate Co.* v. *Schimmel,* 59 Mich. 524, 26 N. W. 692, and cases cited; *Cartwright's Case,* 114 Mass. 230, 238–240; *Snowman* v. *Harford,* 57 Me. 397; *Hawley* v. *Bennett,* 4 Paige Ch. 163; *People* v. *Compton,* 1 Duer (N. Y.) 512; *Buffum's Case,* 13 N. H. 14; *State* v. *Matthews,* 37 N. H. 450; *Watson* v. *Citizens Savings Bank,* 5 S. C. 159; *Huntington* v. *McMahon,* 48 Conn. 174, 200, 201; *Hughes* v. *People,* 5 Colo. 436; *Wells, Fargo & Co.* v. *Oregon, etc., R. W. and Nav. Co.,* 19 Fed. 20; *Wartman* v. *Wartman,* Taney's Dec. (U. S.) 362; 4 Ency. Pl. and Prac. 791.

In *Wilcox Silver Plate Co.* v. *Schimmel, supra,* it is said: "They were bound to obey the injunction, and they disobeyed it at their peril. Neither their belief, motive, or intent with which the writ is disobeyed in any manner varies the responsibility of the party who violates it; on the contrary, they are liable for its violation in whatever capacity or from whatever motives they may have acted."

Finding no error in the record, the judgment is affirmed.