ANDERSON ET AL. v. INDIANAPOLIS DROP FORGING COMPANY ET AL.

[No. 5,134. Filed November 22, 1904.]

1. INJUNCTION.—*Who Bound by Decree.—Third Parties with Notice.*—Where a temporary restraining order was issued by the court in an action by a manufacturing company against a labor union and "all persons now or hereafter aiding or abetting them" in doing certain enumerated unlawful things, such order is binding upon all persons with actual notice thereof, though not named as defendants in such action. p. 103.

2. CONTEMPT.—*Kinds of.*—Contempts in this State are of two kinds, (1) those for which punishment is inflicted for the vindication of public authority, denominated criminal, (2) those in which the enforcement of private rights and remedies are the objects, denominated civil. p. 105.

3. SAME.—*Criminal.*—*Procedure.*—In those cases denominated criminal, or common law contempts, a defendant is entitled to a discharge by filing his sworn denials to the charges filed, and a failure to deny them subjects him to punishment without the hearing of any evidence. p. 105.

4. SAME.—*Statutory Provisions.*—*Appeal.*—Section nine of the law of 1879 (Acts 1879, p. 112, §1025 Burns 1901) is declaratory of the common law and gives the defendant in criminal or common law actions for contempt the right of appeal. p. 106.

5. SAME.—*Chancery Practice.*—*Statutory Construction.*—In a proceeding for contempt, for the enforcement of private rights, a defendant may not obtain his discharge by filing a sworn denial of the charges made, but evidence will be heard in contradiction thereof. Sections eight and nine of the law of 1879 (Acts 1879, p. 112, §§1024, 1025 Burns 1901) do not apply to cases of a civil character, but only to criminal or common law cases. p. 106.

6. SAME.—*Jurisdiction.*—Where the defendants in an action of contempt appear and answer to such proceeding, they can not complain of the lack of process. p. 107.

From Superior Court of Marion County (64,435); *Vinson Carter,* Judge.

Proceedings in contempt in aid of an action by the Indianapolis Drop Forging Company and others against the White River Lodge International Association of Machinists and others. From a finding of guilty, the defendants appeal. *Affirmed.*

*Groninger & Groninger,* for appellants.
*Edenharter & Mull* and *F. E. Matson,* for appellees.

ROBY, J.—The Marion Superior Court, on the 1st day of July, 1903, adjudged the appellants guilty of contempt, fined each of them $25 and costs, and ordered that they stand committed until said fines and costs were paid. On November 8, 1902, the Indianapolis Drop Forging Company filed its complaint for an injunction in said court against the White River Lodge International Association

of Machinists and forty-two other persons, named. On the 13th day of December following, a temporary injunction was granted against certain named defendants, and "all persons now or hereafter aiding or abetting them, or confederating or conspiring with them, or any or either of them; the said parties being thereby enjoined from interfering with, hindering, obstructing or stopping any of the business of said forging company, or its officers, agents, servants or employes, in the operation of its factory and business located in the city of Indianapolis, and from molesting, compelling, inducing or attempting to induce by threats, intimidation, violence or force, any of its employes to refuse or fail to do their work or discharge their duties as such employes, or to leave its service." The decree is specific and comprehensive, and of considerable length. Its purport is as indicated. On June 24, 1903, said forging company filed its motion, supported by affidavit, for a rule requiring appellants and one Edward J. Collins to show cause why they should not be attached for contempt of court for violating said temporary injunction. The motion recited the entry of the injunction aforesaid, and stated that the appellants, though not parties to the suit, had notice and knowledge of said order of injunction long before the happening of the matters alleged, and, with such notice and knowledge, wilfully violated, and caused to be violated, said order of injunction in respect to the matters more fully set forth in the affidavit of Louis A. Beyers, attached and made a part of the motion.

The affidavit of said Beyers is, in substance, that he is a die-sinker by trade, and is and has been ever since September, 1902, in the employ of said forging company; that on June 6, 1903, as he was leaving its shop at the noon hour, he was, without provocation on his part, waylaid, assaulted and beaten by the appellants, who at the time were claiming to do picket duty for defendant White River Lodge International Association of Machinists at the factory of

said company; that, while they were so assaulting and beating him, his brothers, Fred and John Beyers, came up and interfered in his behalf, whereupon appellant called affiant and his said brothers scabs, and threatened to strike them with stones which they had picked up; that thereafter appellant Anderson caused affiant and his two brothers to be arrested and brought before the police court on the false charge of committing an assault, with intent to kill, upon him, the said Anderson, thereby interfering with the employment of affiant and his said brothers, all of which, as affiant believes, was in violation of the injunction heretofore granted and now in force. A rule to show cause was thereupon issued and served, and thereafter, said parties appearing, evidence was heard, the said Collins found not guilty, and a judgment as aforesaid entered against the appellants. The allegations connecting said Collins with the contempt charged, not having been sustained, are not set out in the foregoing summary of the proceeding.

1. The appellants were amenable to the injunction if they had actual notice thereof, although not made defendants in the original action. *Ex parte Lennon* (1897), 166 U. S. 548, 41 L. Ed. 1110, 17 Sup. Ct. 658; *American Steel, etc., Co.* v. *Wire Drawers', etc., Union* (1898), 90 Fed. 605; High, Injunctions (3d ed.), §1444.

Appellants' claim for a reversal of the judgment against them depends upon the provisions of "an act touching contempts of court, prescribing penalties that may be inflicted therefor, and the methods of proceeding therein," approved March 31, 1879 (Acts 1879, p. 112), as amended March 1, 1881 (Acts 1881, p. 10). §§1024-1026 Burns 1901.

By section eight of the act of 1879, *supra,* it is provided that "in all cases of indirect contempt, the person charged therewith shall be entitled, before answering thereto or being punished therefor, to have served upon him a rule of the court against which the alleged contempt may be committed, which said rule shall clearly and distinctly set forth,

the facts which are alleged to constitute such contempt, and shall specify the time and place of such facts with such reasonable certainty as to inform the defendant of the nature and circumstances of the charge against him, and shall specify a time and place at which he is required to show cause, in said court, why he should not be attached and punished for such contempt, which time the court shall, on proper showing, extend so as to give the defendant a reasonable and just opportunity to purge himself of such contempt."

By section nine of the act of 1879, *supra,* it is further provided: "If the defendant shall fail to appear in said court, at the time and place specified in the rule provided for in the last preceding section, to answer the same, or if, after having appeared thereto, the defendant shall fail or refuse to answer touching such alleged contempt, the court may proceed at once, and without any further delay, to attach and punish him or her for such contempt; but if the defendant shall answer to the facts set forth in such rule, by showing that, even if they are all true, they do not constitute a contempt of court, or by denying or explaining or confessing and avoiding them, so as to show that no contempt was intended, then, and in every such case, the court shall acquit and discharge the defendant; * * * and the defendant having appeared to such rule, may except, file a bill of exceptions, and appeal to the general term and to the Supreme Court, in the same manner as in cases of direct contempt."

By section ten of the act of 1881, *supra,* the provisions of the act are made to apply to "all proceedings for contempt in all courts of record in this State, except the Supreme Court thereof: Provided, however, that nothing herein contained shall be construed or held to embrace, limit or control any proceeding against any officer, or party for contempt, for the enforcement of civil rights and remedies."

2. Contempts of court for which punishment is inflicted for the primary purpose of vindicating public authority are denominated criminal, while those in which the enforcement of civil rights and remedies is the ultimate object of the punishment are denominated civil contempts. "Proceedings for contempts are of two classes—those prosecuted to preserve the power and vindicate the dignity of the courts, and to punish for disobedience of their orders, and those instituted to preserve and enforce the rights of private parties to suits, and to compel obedience to orders and decrees made to enforce the rights and administer the remedies to which the court has found them to be entitled. The former are criminal and punitive in their nature, and the government, the courts, and the people are interested in their prosecution. The latter are civil, remedial, and coercive in their nature, and the parties chiefly in interest in their conduct and prosecution are the individuals whose private rights and remedies they are instituted to protect or enforce." *In re Nevitt* (1902), 117 Fed. 448, 458, and authorities cited. See, also, *Heinze* v. *Butte, etc., Min. Co.* (1904), 129 Fed. 274.

3. In the former class, "In cases at common law the defendant will be discharged if, by his answers to interrogatories filed, he makes such a statement as will free him from the imputed contempt and opposing testimony will not be heard." *Underwood's Case* (1840), 2 Humph. 45. At common law always, and by the terms of §1025, *supra*, a sworn denial of the facts charged entitled the accused to his discharge. *Wilson* v. *State* (1877), 57 Ind. 71; *State* v. *Earl* (1872), 41 Ind. 464; *Fishback* v. *State* (1891), 131 Ind. 304; *Stewart* v. *State* (1895), 140 Ind. 7; *Shirk* v. *Cox* (1895), 141 Ind. 301. Failing to deny the contempt, punishment was assessed without hearing evidence. *Haskett* v. *State* (1875), 51 Ind. 176; *Hawkins* v. *State* (1890), 125 Ind. 570; *Whittem* v. *State* (1871), 36 Ind. 196; *Middlebrook* v. *State* (1876), 43 Conn. 257,

21 Am. Rep. 650; *People* v. *Wilson* (1872), 64 Ill. 195, 16 Am. Rep. 528; Rapalje, Contempts, §113.

4.   Section nine, *supra,* is declaratory of the common law, and gives to the defendant, in unmistakable terms, the right of appeal, which is denied in some jurisdictions, and, prior to such statute, debated in our own. *State* v. *Tipton* (1822), 1 Blackf. 166; *Hunter* v. *State* (1855), 6 Ind. 423; *Whittem* v. *State, supra.*

5.   Neither section eight nor section nine was intended to apply to cases in chancery, where it has always been the rule that "the truth of the defendant's statement in reply to interrogatories filed may be controverted on the other side, and the whole matter be inquired into and ascertained by the court.   *   *   *   Without the power to enforce these decrees by punishing disobedience and violation of them, a court of chancery would be worse than useless, and for this reason, perhaps, the practice on the point we are considering differs from that of a court of common law, for if the answer of a defendant in questions of contempt were conclusive, a decree might lose all its vitality, and not be enforced at all.   The temptation, in many cases, to defeat the efficacy of a decree, by sturdy denial of imputed contempt, might be too strong for the virtue of a party.   The rule, therefore, is regarded as well settled, in England and in this country, that, in chancery, testimony will be heard to contradict as well as to support the truth of a statement made by one against whom proceedings for contempt have been instituted." *Underwood's Case, supra; In re Debbs* (1895), 158 U. S. 564, 39 L. Ed. 1092, 15 Sup. Ct. 900.

That the act of 1879 and its amendment were not designed to affect cases falling within this class is put beyond all manner of doubt by the concluding provision of section ten, *supra*—that the act shall not apply to any proceeding "for the enforcement of civil rights and remedies." *Beck* v. *State* (1880), 72 Ind. 250.   It is not, therefore,

necessary to refer to the inherent power of the courts to enforce their decrees and command respect for their processes. The existence of such powers is essential to the maintenance of our system of government. No legislature can abridge, limit or take away such power, either directly or indirectly; by attempting to define the offense or undertaking to regulate procedure. The legislature of Indiana has not attempted to do so. It follows that appellants were not entitled to be discharged upon their verified answer.

6. The appellants appeared to the proceeding. They can not, therefore, complain of lack of process. The evidence supports the finding. The learned judge of the superior court was constrained to the action taken by the appellants themselves.

Judgment affirmed.