DENNY ET AL. *v.* STATE EX INF. BRADY.
[No. 25,239.  Filed July 29, 1932.]

*Walterhouse & Miller* and *Richard L. Ewbank,* for appellants.

*Arthur L. Gilliom,* Attorney-General; *J. A. VanOsdol,* and *Warner & Warner,* for appellees.

TREANOR, J.—Judgment was rendered on November 25, 1925, in the Henry Circuit Court perpetually enjoining Sumner B. Denny and others, their agents, employees, etc., from "driving, running or operating any jitney bus upon or along that part of any street" . . . "in the City of Muncie, Indiana, upon which there is located the street railway tracks of the Union Traction Company of Indiana, upon or over which street cars are regularly operated, but the defendants" . . . "are not enjoined from crossing any such street, . . ." On December 18, 1925, Arthur W. Brady, Receiver for the

Union Traction Company of Indiana, filed in the aforesaid cause in the Henry Circuit Court his sworn motion for attachment or citation against the appellants herein, charging them with "knowingly and willfully violating the order of injunction" on December 14, 1925, by the operation of jitney busses over streets with street car tracks in the city of Muncie, and moved that "an attachment for contempt against" the appellants "be awarded and issued by the court, or that the court make a rule against said defendants and other persons named to show why such attachment should not issue, pursuant to sections 1217 and 1218 of 1 Burns Statutes, Revision of 1914 (§§1237-38 Burns Ann. Ind. St. 1926), and for such other orders and proceedings and the infliction of such penalties as are or may be necessary to compel observance of said judgment, and order of injunction."

Each appellant filed a motion to discharge the rule against him because of the deficiencies of the information and also filed an answer for the purpose of purging himself of the alleged contempt. The nature of the other special answers will appear from the errors assigned in support of the motion for a new trial and the discussion which is to follow.

A trial was had and evidence heard and the trial court made a finding that the defendant appellants were "guilty of contempt as charged." The court thereupon rendered judgment, fining Sumner B. Denny $250.00 and Harold O. Denny $50.00, from which judgment an appeal was prayed and bond filed. Appellants thereafter filed their several motions for a new trial upon the following specified causes:

1. The finding of the court is not sustained by sufficient evidence.
2. The finding of the court is contrary to law.
3. The fine assessed by the court is excessive.
4. The court separately and severally erred in refusing to acquit the defendant Sumner B. Denny

and Harold O. Denny and each of them separately and severally upon their answer.

5. The court erred in permitting evidence to be introduced to contradict and deny the separate and several verified paragraph of answer of said Sumner B. Denny, denying each and every allegation in the petition and citation for contempt filed in the above entitled cause.

6. The court erred in permitting evidence to be introduced to contradict and deny the separate and several verified answers of Harold O. Denny, denying each and every allegation in the petition and citation for contempt filed in the above entitled cause.

The court overruled the motion for new trial, appellants excepted and prosecute this appeal.

We shall first consider appellants' proposition that the trial court erred in overruling the motion to discharge the rule against them, the ground for the motion being that the information charging the contempt was not properly verified.

The information sets out in detail various acts of the appellants which were alleged to be in violation of the injunction and consequently to constitute the alleged contempt of court; and, also, recites "that this affidavit is made on information and belief based on reports to affiant by his agents and employees of facts personally known to them." The statute covering indirect contempt provides that "no such rule (citing for contempt), as herein provided for, shall ever issue until the facts alleged therein to constitute such contempt shall have been duly verified by the oath of, (or) affirmation of, some officer of the court or other responsible person." (§1083 Burns Ann. Ind. St. 1926, Acts 1879, ch. XXXV, p. 112.) We think the foregoing requirement is not satisfied by a general verification by oath of an information which discloses that the affiant is relying entirely upon reports of third persons who

have not sworn to the truth of the reports. Appellee, however, insists that the information was filed under §1237, Burns, etc., 1926, *supra* (Acts 1881, p. 240, §190) (2 R. S. 1852, §149, p. 61), which provides for the initiating of a contempt proceeding against one who has *wilfully* disobeyed an order of injunction; the appellee assuming that a proceeding initiated under §1237 is one for civil contempt and consequently does not require "the affidavit below to be in positive terms and on personal information." The appellee also points out that in the case of civil contempt the defendant is allowed to introduce evidence and that the original affidavit is not used in evidence. We shall hereinafter point out that we think §1237 does not control, but even if it did control and if this proceeding could be said to be one for civil contempt, we still should hold that the information should be verified by oath of the informant and set out facts personally known to the informant or else that the information should be supported by the affidavit of the person or persons who have personal knowledge of the facts. In the instant case the information, if it be said to allege a civil contempt, should have been supported by the affidavit of the agents or employees upon whose reports the receiver relied. We feel that one should not come into a court seeking the extraordinary and summary remedy even of civil contempt against an adversary party unless the informant or some supporting party has personal knowledge of the existence of facts which would justify the issuance of an attachment or a rule to show cause. We hold that the information was not sufficient to charge contempt, civil or criminal.

Whether the trial court was in error in refusing to discharge the defendants on the strength of their respective answers depends upon whether the proceeding was one in criminal or civil contempt. This is also true of the alleged error of the trial court in permitting the

plaintiff to introduce evidence in support of the information. Appellee insists that the action below was governed by §1237, *supra,* and that it was prosecuted for the purpose of enforcing appellee's civil rights under the injunction. For the following reasons we believe that §149, Civil Code of 1852, now §1237 referred to criminal contempts and was repealed by the general contempt act of 1879.

From 1852 to 1878 the only general legislative provision relating to the power of circuit courts to punish for contempt of court was §13, ch. 4, of the ■ Acts of 1852 (now appearing as §1385, Burns, etc., 1926) and which reads as follows:

"The said circuit courts, respectively, shall have full authority to administer all necessary oaths, and to punish, by fine and imprisonment, or either, all contempts of their authority and process in any matter before them, or by which the proceedings of the courts or the due course of justice is interrupted."

We think the foregoing applied only to criminal contempts,—that is, contempts which immediately interfered with the orderly functioning of the court. The General Assembly made no effort to regulate procedure in contempt cases until 1879; but through judicial decisions the practice in such cases had become quite definitely established. There had been some uncertainty as to whether the defendant's answer in indirect contempt cases should be the sole basis of the court's determination of the issues raised by the answer or whether the defendant might be interrogated and other evidence introduced. The latter rule had grown up in chancery, while the common law courts had adhered to the rule that the defendant's answer under oath had to be taken as true and that the defendant was entitled to be discharged if his answer cleared him of the charges.

If the answer contained false matter the defendant was liable to indictment for perjury. The Act of 1879 adopted the practice as laid down in the cases of *Wilson* v. *State* (1877), 57 Ind. 71; *Haskett* v. *State* (1875), 51 Ind. 176; *Burke* v. *State* (1874), 47 Ind. 528 and *State* v. *Earl* (1873), 41 Ind. 464, which included the rule that in criminal contempt cases the answer of defendant was conclusive.

> "We have examined the authorities, and are satisfied that in all cases of proceedings for alleged constructive contempts, except, perhaps, when they are to enforce a civil remedy, if the party charged fully answers all the charges against him, he shall be discharged, as to the attachment, and that the court cannot, after that, hear evidence to impeach or contradict him. 4 Bl. Com. 286; *Saunders* v. *Melhuish*, 6 Mod. 73; *Thomas's Lessee* v. *Cummins*, 1 Yeates, 40; In the matter of Moore, 63 N. C. 397; *The United States* v. *Dodge*, 2 Gallis. 313; *People* v. *Few*, 2 Johns. 290." (*The State* v. *Earl, supra,* p. 465.)
>
> "In our opinion, the sworn statement of the defendant in this case was a full answer to the accusation made against him in the affidavit, and hence the court should have discharged the rule made against him and should not have proceeded to hear evidence in support of the original affidavit and in contradiction of the answer of the defendant." (*Burke* v. *State, supra,* p. 533.)[1]
>
> "It has been held in several cases in this court, that if the defendant in such case deny under oath the facts constituting the alleged contempt, he should be discharged, leaving him, if he has sworn falsely, to be prosecuted for the perjury." (*Haskett* v. *State, supra,* p. 189.)
>
> "In the case of *Burke* v. *State*, 47 Ind. 528, the

---

[1] This case modified *Whittem* v. *The State* (1871), 36 Ind. 196, in respect to the point covered in the excerpt with the statement that "this modification is prepared by and meets the approval of the writer of the opinion in the above case (i. e., *Whittem* v. *State*) who has become satisfied from an examination of the authorities that he was led into error by supposing that the rule in chancery was applicable to cases of criminal contempt." (p. 533.)

rule governing proceedings in such cases was fully considered. It was, in substance, decided in that case that where a person charged with a. constructive contempt, in procuring a witness to absent himself, appears, and, in answer to a rule, makes a statement under oath, that the matters in the affidavit against him are not true, and sets up a state of facts consistent with his innocence, and that there was no intention on his part to interfere with the process of the court, he should be discharged; and it is error for the court to proceed to hear evidence of the truth of the original affidavit and the falsity of the answer.

The rule thus laid down is well sustained by authority, and is, in our opinion, applicable to the case at bar." (*Wilson* v. *State, supra,* p. 73.)

A comparison of the holdings of the above cases with the provisions of the act of 1879 (§1076 et seq. Burns, etc., 1926; Acts of 1879, ch. XXXV, p. 112) discloses that the act constituted simply a statutory declaration of the law of criminal contempt, both substantively and procedurally, as it had been understood and declared by this court. These cases clearly indicated that intent was an essential element of criminal contempt; and this element was recognized in the act of 1879 by the requirement of wilfullness in the act of hindering, resisting or delaying any process or order of a court. Further the act of 1879 expressly exempted from its provisions "any proceeding against any officer or party for contempt for the enforcement of civil rights and remedies," thus leaving both the substantive and procedural law of civil contempt controlled by judicial rules or by statutes other than the act of 1879. The courts of chancery early had recourse to coercive measures (as an inevitable concomitant of their *in personam* jurisdiction) to compel the losing party to carry out the orders of the court made for the benefit of the complaining party. In addition to the foregoing power, which was essentially civil contempt jurisdiction, chancery also punished for

acts of criminal contempt. In both cases chancery practice permitted interrogatories and the introduction of evidence. By the Indiana Constitution of 1816 both equity and law jurisdiction were conferred upon the Supreme and Circuit courts of Indiana and under the chancery practice the circuit courts had full power to grant injunctions and "to exercise all powers that are usual for courts of chancery to exercise in granting restraining orders and injunctions, and to issue all other process necessary to carry into effect the provisions of this section, by attachment or otherwise, according to the exigency of case, and agreeable to the usages of courts in chancery." (Indiana Revised Statutes, 1831, ch. LXXII, §20, p. 395.)

It is clear from the preceding discussion that prior to the adoption of the Constitution in 1851 the circuit courts on their common law side had the power to punish for criminal contempts and on their chancery side exercised all the powers of the early separate courts of equity in the matter of both criminal and civil contempt. After the adoption of the new Constitution in 1851 the General Assembly abolished all distinctions between actions at law and suits in equity and provided for the one form of action. While there was no longer either a court of chancery or a chancery practice, the powers of the courts of chancery were not destroyed, and in Art. VIII, §§136-155 of the Civil Procedure Act of 1852 the circuit courts were authorized to issue restraining orders and injunctions. Sections 149-151 (now §§1237-1239 Burns, etc., 1926) read as follows:

"Sec. 149. Whenever it shall appear to any court granting an order of injunction, or judge thereof in vacation, by affidavit, that any person has wilfully disobeyed the order, after notice thereof, such court or judge shall award an attachment for contempt against the party charged or a rule to show cause why it should not issue. The attachment or rule

shall be issued by the clerk of the court and directed to the sheriff, and shall be served by him.

"Sec. 150. The attachment for contempt shall be immediately served by arresting the party charged, and bringing him into court, if in session, to be dealt with as in other cases of contempt; and the court shall also take all necessary measures to secure and indemnify the plaintiff against damages in the premises.

"Sec. 151. If the court be not in session, the officer making the arrest shall cause the person to enter into a written undertaking, with surety to be approved by the officer, personally to appear in open court on the first day of the next term thereof to answer such contempt, and that he will pay to the plaintiff all his damages and costs occasioned by the breach of the order; and, in default thereof, he shall be committed to the jail of the county, until he shall enter into such written undertaking with surety, or be otherwise legally discharged."

It will be noticed that the act for which one might be attached for contempt consists of "wilfully" disobeying the order of injunction; and that the party charged was "to be dealt with as in other cases of contempt." Immediately following this last (in §150), is the provision that "the court shall also take all necessary measures to secure and indemnify the plaintiff against damages in the premises." In §151 there is provision for the giving of security by the person charged for the purpose of protecting the injunction plaintiff in case court should not be in session. Apparently it was the purpose of the sections relating to contempt to make clear that circuit courts could punish criminally for violation of injunctions, as in other cases of contempt if the violation consisted of *wilful disobedience* of the order of the court; and also to specifically authorize the circuit court to take all necessary measures to "secure and indemnify the plaintiff" against civil loss as a result of the breach of the injunction. That the General Assembly should have thought such

action on its part prudent, if not necessary, can be readily understood in view of the fact that all distinctions between equity and law procedure were being abolished and chancery and common law jurisdiction were being conferred upon the same court. (§1, p. 27, R. S. 1852; Acts 1881, special session, p. 240; §256 Burns, etc., 1926.) In short §§1237-1239, *supra*, preserved to circuit courts the "powers that. are usual for courts of chancery to. exercise in granting restraining orders and injunctions" and the means to carry these powers into effect "by attachment or otherwise according to the exigency of the case, and agreeable to the usages of courts of chancery," and also authorized the circuit court to punish violation of restraining orders or injunctions as criminal contempts, if the act of disobedience constituted a criminal contempt. When the General Assembly in 1879 enacted the contempt act which covered the entire subject of criminal contempt, both direct and indirect it repealed by necessary implication those portions of the injunction act of 1852 which applied to indirect criminal contempt. This result was not affected by the subsequent re-enactment in 1881 of sections 149-151 of the Civil Code of 1852, since the re-enacted clauses (§§190-192, ch. 38, p. 240, Acts 1881) must be construed in the light of the contempt Act of 1879; and the statement in §191 of the Civil Code of 1881 that the party charged is "to be dealt with as in other cases of contempt" must be understood to mean other cases of criminal contempt provided for in the act of 1879.

Further, the re-enacted sections neither conflict with any provisions of the 1879 act nor purport to cover the subject of criminal contempt. Consequently when a defendant in an injunction suit wilfully disobeys the injunction he may be cited for contempt of court as provided for in §9 of the act of 1879 (§1084 Burns, etc., 1926) and not under §§150-151 of

the injunction act of 1852 (§§1237-1238, *supra*). He may, of course, be proceeded against as for a civil contempt and any appropriate sections of the act of 1852 may be invoked in that proceeding but there is no section in that act which authorizes a punitive fine against the defendant.

Since we hold that §§149-151 of the Civil Procedure Act of 1852, *supra,* insofar as they related to criminal contempt were repealed by the Criminal Contempt Act of 1879, and that the consequences of this repeal were not affected by the re-enactment of §§149-151 in the later Code of 1881 (§§190-192), it follows that there is no force in appellees' contention that this proceeding was one for civil contempt merely because it was brought under §1237. Consequently to determine whether the instant proceeding was one for criminal contempt of court or for civil contempt for disobedience of a court order, it is necessary to examine the information, especially allegations respecting the mental attitude of the defendant, the relief asked and granted.

The proceeding was instituted under the number and title of a civil cause: *"Union Traction Company of Indiana v. Donald Lake, et al.,"* and the plaintiff, by substitution in that case, Arthur W. Brady, Receiver, appears to have been the sole party on one side in opposition to the appellants; the proceedings were not entitled *"State of Indiana v. Denny, et al."* as would have been proper if the proceedings had been for criminal contempt. *Gompers* v. *Buck Stove & Range Co.* (1911), 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874.

The information alleged that the defendants had "knowingly and wilfully" violated the order of injunction, thus charging the element of wilfullness, a necessary element to every charge of criminal contempt. The prayer contained in the informa-

tion was that "an attachment for contempt . . . be awarded and issued by the court or that the court make a rule against said defendant and other persons named to show why such attachment should not issue, pursuant to sections 1217 and 1218, 1 Burns Statutes, Revision of 1914, and for such further orders and proceedings and the infliction of such penalties as are or may be necessary to compel observance of said judgment and order of injunction." The procedure which the plaintiff asked the trial court to adopt was to issue "an attachment for contempt . . . or make a rule . . . to show why such attachment should not issue." Neither under the Contempt act nor under the Injunction act, as modified by the Contempt act, can the court issue an attachment without having first issued a rule to show cause. If the proceeding is for criminal contempt the defendant can be required to show cause why he should not be attached and punished for contempt (§1083, *supra*) but if the proceeding is for civil contempt for disobedience of an injunction, the defendant should not be required to show cause why he should not be *attached* and *punished* but rather should be required to answer the charge of having violated the injunction and the relief sought should be that the court "take all necessary measures to secure and indemnify the plaintiff against damages in the premises," specifying what measures would be necessary.

> "Civil contempt is a violation of an order, or decree of a court made for the benefit of the opposing party. It is not an offense so much against the dignity of the court as against the party." Willis, II Ind. Law Jour. 312.

The prayer of plaintiff's information would indicate that the plaintiff was asking that the trial court adopt the method of procedure urged in order to "compel observance of said judgment and order of injunction" and

not in order to require the defendants to repair the damage which had resulted from the alleged violation of the order of injunction. Under the authority of §1238, *supra,* which provides that the court may "take all necessary measures to secure . . . the plaintiff against damages in the premises" the court might require a defendant to furnish security in the form of a bond payable to the plaintiff in a sum sufficient to compel observance of the injunction and conditioned upon the observance of the injunction. Evidently the plaintiff was not asking for a penalty or fine to compensate for damages.

The record shows that the plaintiff filed replies to the 3rd paragraph of answer of Sumner B. Denny and to the plea in abatement of Harold Denny. The filing of replies would be proper only in a civil contempt case for the reason that in a case of criminal contempt the statute, §1084, *supra,* provides that the defendant shall be attached and punished or acquitted and discharged upon the charge and answer thereto, and does not make provision for the filing of any further pleadings to form the issue.

Upon the issues raised in the trial court by the plaintiff's replies to Sumner B. Denny's third paragraph of answer and Harold Denny's plea in abatement and by Sumner B. Denny's first, second and fourth paragraphs of answer to the information, the court heard and considered the testimony of witnesses of the plaintiff and of the defendants, which would indicate that the trial court as well as the parties were proceeding upon the assumption that this was a civil action and not a proceeding for criminal contempt. Section 9 of the Contempt Act (§1084, *supra*) does not provide for the hearing of evidence by the court and this Court has held, in construing the statute, that if the defendant's answer under oath contains sufficient

facts to fully purge the contempt he shall be discharged, and that if the answer does not purge the contempt the court should assess the punishment. *Zuver* v. *State* (1919), 188 Ind. 60, 121 N. E. 828; *Shirk* v. *Cox* (1895), 141 Ind. 301, 40 N. E. 750; *Fishback* v. *State* (1892), 131 Ind. 304, 30 N. E. 1088; *Haskett* v. *State, supra.*

The judgment of the court was that the defendants, Sumner Denny and Harold Denny, pay fines of $250.00 and $50.00 respectively. The fines were not assessed for the benefit of the injunction plaintiff but were to all appearances imposed upon the contempt defendants as ordinary fines payable to the state, i. e., criminal punishment. The punishment authorized by the act of 1879 (§1081, *supra*) must be understood to be limited to cases of criminal contempt, consequently we have no statutory authority for the infliction of a *punishment* of either imprisonment or fine in cases of civil contempt. As a matter of principle we can see neither reason nor justice in the imposition of a term of imprisonment or fine in a case of civil contempt except for the sole purpose of coercing the contempt defendant to discharge his obligation, or to repair damage already done to the other interested party. After examining many authorities we are convinced that the sound and just doctrine, which is announced by the Supreme Court of the United States in *Gompers* v. *Buck Stove & Range Co., supra,* is that imprisonment in civil contempt should be used only to coerce, and that a fine can be properly imposed only for the benefit of the plaintiff in the civil action to repair damage done by violation of the order of the court made in the civil proceeding. The injunction statute of 1852 (§1239, *supra*), by the following provision, authorizes a bond which serves the purpose of both an appearance bond and a bond to protect the interests of the injunction plaintiff:

"If the court be not in session, the officer making the arrest shall cause the person to enter into a written undertaking, with surety to be approved by the officer, personally to appear in open court on the first day of the next term thereof to answer such contempt, and that he will pay to the plaintiff all his damages and costs occasioned by the breach of the order; and, in default thereof, he shall be committed to the jail of the county, until he shall enter into such written undertaking with surety, or be otherwise legally discharged."

In the instant case the trial court probably proceeded on the assumption that he was trying the appellant for civil contempt; but he also proceeded on the assumption that he could inflict a penalty as provided for by our indirect criminal contempt statute. The latter is apparent from the fact that he imposed a fine without any provision that such fine was for the benefit of the plaintiff. If the proceeding be considered as one for civil contempt then the situation is precisely the same as the following hypothetical situation suggested by the Supreme Court in *Gompers* v. *Buck Stove, etc., Co., supra:*

"There was therefore a departure—a variance between the procedure adopted and the punishment imposed, when, in answer to a prayer for remedial relief, in the equity cause, the court imposed a punitive sentence appropriate only to a proceeding at law for criminal contempt. The result was as fundamentally erroneous as if in an action of 'A. vs. B. for assault and battery' the judgment entered had been that the defendant be confined in prison for twelve months."

We conclude that if the proceeding before the trial court be considered one in criminal contempt the appellants, by their answers, purged themselves of all contempt and should have been discharged; and that if the proceeding be considered one of civil contempt then the court imposed an unauthorized penalty, that is, a sentence for criminal contempt was entered in a proceed-

ing which was a part of the original civil action and which would justify the granting of civil relief merely.

We are aware that some of the decisions of both this Court and the Appellate Court have apparently approved the infliction of a punitive sentence in a proceeding which was called a civil contempt action. This result has been due to failure to recognize that under our procedure there cannot be a common law criminal contempt and a chancery criminal contempt. The power of a court of chancery to enforce its order "by attachment or otherwise, according to the exigency of the case" has been preserved to our circuit courts under the so-called power to punish for civil contempt, which is properly not a power to punish, but one to coerce by imprisonment or to impose money penalties for the benefit of the injured party, or "to take all necessary measures to secure and indemnify the plaintiff against damages in the premises." (§1238 Burns, *supra*.)

> "In the case of contempt in violating an order or decree of a court of equity we have an entirely different problem. So far as the ancient process has not been modified by modern innovations we have seen that it was purely coercive, not punitive. . . . It thus appears that imprisonment for contempt of the chancellor's decree, or rather for contempt of the king's writ, . . . was not punitive but coercive; and that anything in the nature of a sentence to a definite punishment, like a fine or an imprisonment for a term, was entirely foreign to the process." Beale, 21 H. L. R. 161, 163, 170-171.

But when the court of chancery and the common law court were abolished and a new type of court created which was neither, but simply a court of the law of the jurisdiction, exercising the functions of both, there could be no longer two types of criminal contempt. When our circuit court issues an order of injunction it is exercising a power once exercised by a court of chancery; but if the injunction defendant disobeys the order

he is disobeying the order of the circuit court and if he is guilty of criminal contempt the offense is against the circuit court and not against some non-existent court of chancery. Consequently the law applicable to the offense is the law, judicial or statutory, which governs criminal contempt of circuit courts. As already indicated, *supra*, the so-called power to punish for civil contempt is not a power to punish at all; and failure to obey an order of a court in a civil proceeding made "for the enforcement of civil rights and remedies" is, in itself, no more of a contempt of court than failure to pay an ordinary money judgment. But since the early courts of chancery enforced their orders only by personal coercion, imprisonment became the usual means of compelling obedience to their orders. But the coercive action of the court of chancery was merely a means of giving effect to its order or decree analogous to a levy and sale of property under an order of execution as a means of giving effect to a money judgment in an action at law. Refusal to discharge a money judgment has never been considered contempt of court,—although a wilfull interference with the officer of the court in carrying out the execution may amount to a contempt of court. *Hawkins* v. *State* (1890), 125 Ind. 570, 25 N. E. 818. So in the case of a failure of an injunction defendant to obey the order of injunction the mere failure to obey is not a contempt of court; but amounts to an interference with the right of the injunction plaintiff under the order of injunction. Since the injunction plaintiff is entitled, as a matter of right, to the conduct prescribed by the order, it follows that the intention of the defendant is not material. The sole question is whether the defendant has in fact disobeyed the order and the injunction plaintiff is not concerned with the question of whether the act of disobedience constitutes a contempt of the court. The only proper demand of

the injunction plaintiff, as such, is that the court exercise its coercive power to compel the defendant to act, or to forbear to act, in accordance with the order of the injunction. It is true, as stated in *Anderson* v. *Indianapolis Drop Forging Co.* (1904), 34 Ind. App. 100, 72 N. E. 277, that the defendant would not be entitled to a discharge on his verified answer; but the reason is not, as indicated in that opinion, because a court has a more arbitrary power over a defendant to punish in a case of so-called civil contempt than in a criminal contempt case. We think the true reason is that the civil rights and duties of the parties are fixed by the injunction order and a showing by the defendant to the court that his alleged acts do not constitute criminal contempt does not determine whether his acts, or failure to act, deprive the plaintiff of his rights under the order of injunction.

In *Thistlethwaite et al.* v. *State* (1898), 149 Ind. 319, 324, 49 N. E. 156, the defendants were charged with disobeying an order of injunction. They filed an answer which clearly was sufficient to purge themselves of criminal contempt. The trial court refused to discharge the defendants and fined them for contempt of court. In an opinion affirming the judgment this Court made the following statements:

"Appellants insist that this proceeding is under section two of the act of 1879, being section 1019, Burns R. S. 1894 (1007 Horner's R. S. 1897), and that they were entitled to be discharged upon said answer under the provisions of section 9 of said act, being section 1025, Burns R. S. 1894 (1013, Horner's R. S. 1897).

"This, however, is a proceeding against appellants for contempt, to enforce a civil right and remedy; and it is expressly provided by section 10 of said act, as amended (Acts 1881, p. 10), being section 1026, Burns R. S. 1894 (1014, Horner's R. S. 1897), that said act does not apply to proceedings of this kind.

"The Hamilton Circuit Court had the inherent power to punish appellants for contempt for violating said injunction. In such proceeding appellants could not purge themselves by alleging in their answer that they acted in good faith, and without any intention of violating said order of the court. The rights of the parties who obtained said injunction cannot be defeated in this way. Whether or not appellants were guilty of contempt did not depend on their intention, but upon the acts done by them."

The foregoing excerpts reveal the failure to distinguish between the power of the circuit court to punish for criminal contempt and its power to coerce in case of a civil contempt. The Hamilton Circuit Court did not have inherent power to *punish* the appellants for violating the injunction if, as the opinion stated, the proceeding was one to enforce "civil rights and remedies." It had ample power to coerce the defendants to obey the order and to repair any damage occasioned by past acts of disobedience.

In *Gompers* v. *Buck Stove & Range Co., supra,* the United States Supreme Court pointed out the distinction between the purposes of coercive measures in civil contempt and punitive measures in criminal contempt. The following excerpts are in point.

"For example: If a defendant should refuse to pay alimony, or to surrender property ordered to be turned over to a receiver, or to make a conveyance required by a decree for specific performance, he could be committed until he complied with the order. Unless these were *special elements of contumacy,* (our italics), the refusal to pay or to comply with the order is treated as being rather in resistance to the opposite party than in contempt of the court. The order for imprisonment in this class of cases, therefore, is not to vindicate the authority of the law, but is remedial and is intended to coerce the defendant to do the thing required by the order for the benefit of the complainant. If imprisoned, as aptly said in In Re Nevitt, 117 Fed. 451, 'he

carries the keys of his prison in his own pocket.'
He can end the sentence and discharge himself at
any moment by doing what he had previously re-
fused to do."

"On the other hand, if the defendant does that
which he has been commanded not to .do,. the dis-
obedience is a thing accomplished. Imprisonment
cannot undo or remedy what has been done nor af-
ford any compensation for the pecuniary injury
caused by the disobedience. If the sentence is lim-
ited to imprisonment for a definite period, the de-
fendant is furnished no key, and he cannot shorten
the term by promising not to repeat the offense.
Such imprisonment operates, not as a remedy co-
ercive in its nature, but solely as punishment for
the completed act of disobedience.'

"In this case the alleged contempt did not con-
sist in the defendants' refusing to do an affirmative
act required, but rather in doing that which had
been prohibited. The only possible remedial relief
for such disobedience would have been to impose
a fine for the use of complainant, measured in some
degree by the pecuniary injury caused by the act
of disobedience." 221 U. S. 418, 442, 34 L. R. A.
(N. S.) 874, 883, 884.

It does not follow from the foregoing that a disobedi-
ence of an order of a court which entitles a party to
invoke the coercive power of the court may not
constitute also a criminal contempt of court. If
the act of disobedience is wilful and involves a
deliberate design to disobey the order as an act of defi-
ance of, and interference with, the function of the court
there would be criminal contempt of court. An order
of injunction places a direct personal duty upon the
defendant and he is directly and personally responsible
to the court for the accomplishment of the object of the
order. He is in a very real sense an instrumentality of
the court. It would seem that the wrong done to the
court by an injunction defendant who wilfully refuses
to carry out the order of the court is in its nature not
unlike that done by one who wilfully interferes with an

officer of the court who is attempting to execute a court order. But it is vital to the interests of an injunction defendant, and required by concept of a fair trial, to know whether he is being proceeded against as for a criminal contempt. He may be able to purge himself of a criminal contempt even though he has done some act which violates the order of the court and which properly might subject him to coercive action by the court. Certainly he should not be summarily brought into court on the assumption that the other interested party is seeking protection of his civil rights as defined by an order of the court and, after a hearing, be punished as for a criminal contempt. The complaining party also is entitled to have the benefit of a clear distinction, both in substance and procedure. His interest is not in having the defendant fined or imprisoned to vindicate the judicial function but entirely to have his rights, as defined by the order of the court, protected, insofar as the court can, by its coercive power, protect his rights. It may often happen that the circumstances are such that coercive action by the court is unavailing but the mere inability of the defendant to repair damage already done, or to conform to the court's order in the future, should not be allowed to transform the coercive features of civil contempt into punitive measures. This court has indicated that it does not approve any such action. In *Perry* v. *Pernet* (1905), 165 Ind. 67, 74 N. E. 609, it quoted with apparent approval from *Hendryx* v. *Fitzpatrick* (1884), 19 Fed. 810, as follows:

> "We do not mean to be understood that the court has a general discretion to annul orders passed for the benefit of a party to the suit; but that where inability is shown to comply with the order,—as, for instance, insanity, if the decree requires an act to be done, or poverty, if the decree is for the pay-

ment of money,—it is according to the course of
the court, and all courts, to discharge the imprison-
ment, of which the end is proved to be unattain-
able."

and also the following from *Thweatt* v. *Kiddoo* (1877),
58 Ga. 300, 303:

"After imprisonment has been tried for a reason-
able time and proved unfruitful as a remedy, the
question can be made how and when it ought to
terminate. Doubtless, there is some way to reach
a case of *bona fide* poverty, and prevent imprison-
ment from becoming perpetual, or even from being
unduly protracted."

In view of the wide range of the foregoing discussion
we think it advisable to state definitely our conclusions,
insofar as required by this appeal, respecting the rules
applicable to criminal and civil contempts arising out
of disobedience of orders of injunction. Our conclu-
sions are as follows:

1. That the facts in an information charging a
   criminal contempt of court, must be verified by
   the oath of the informant and upon his personal
   responsibility.

2. That the information for a criminal contempt
   should be entitled State of Indiana vs. the de-
   fendant and filed as an independent action and
   prosecuted by the State.

3. That a proceeding for a civil contempt should be
   filed in the civil case out of which it arises; that
   the pleading upon which the proceeding rests
   may be merely a motion or petition by the com-
   plainant.

4. That such pleading must be sworn to by the com-
   plainant on his personal knowledge or supported
   by the affidavit of someone who has personal
   knowledge of the facts set out in the pleading.

5. That to constitute a criminal contempt the acts of disobedience must be characterized by a deliberate intention to defy the authority of the court, while an actual intent to do an act which violates the terms of a court order is sufficient to constitute a civil contempt.

6. That in a civil contempt proceeding the only proper object is the enforcement or protection of the rights of the complainant and only coercive or remedial measures can be employed by the court; that imprisonment for a term or a fine not for the benefit of the complainant must be considered punitive and properly imposed only in a criminal contempt proceeding.

7. That even though a single act of disobedience of an order of injunction may constitute both a criminal and civil contempt a proceeding in contempt for enforcement of civil rights and remedies is legally as independent of a criminal proceedings as a civil action for assault and battery is independent of a criminal prosecution based upon the same facts.

8. That the intent of the alleged contemnor distinguishes a criminal contempt from a mere violation of an order of injunction; and, consequently, criminal and civil contempts cannot be distinguished by the test of whether the conduct of the defendant consists in refusing to do an act required by the order of the court or in doing an act prohibited by the order of the court, since one may as flagrantly defy the authority of a court by refusing to do an act enjoined, as by doing an act forbidden by an order of the court.

9. That in criminal contempt proceedings the defendant is entitled to a discharge upon his verified answer if the answer, considered with the information, is sufficient to show lack of intent to defy the authority of the court; while in a civil con-

tempt proceeding the answer need not be verified and both parties are entitled to introduce evidence.

It follows from our reasoning and conclusions that appellants' causes were sufficient to entitle them to a new trial; but since we hold that the information was defective the trial court should have sustained appellants' motions to discharge the rule to show cause. (We consider the motion to discharge the rule equivalent to a motion to quash.) Consequently the judgment is reversed and the trial court is directed to sustain the several motions to discharge the rule to show cause and for further proceedings not inconsistent with this opinion.

Travis, J., concurs in the reversal of the judgment.

Myers, J., absent.