In re The Marriage of Patricia L. BECHTEL, Appellant (Respondent Below),

v.

James A. BECHTEL, Appellee (Petitioner Below).

No. 20A04–8804–CV–00127.

Indiana Court of Appeals, Fourth District.

April 4, 1989.

Larry A. Barkes, Hartzog, Baker, Hepler & Saunders, Thomas A. Murto, Murto & Holbrook, Goshen, for appellant.

Max K. Walker, Jr., Slabaugh, Cosentino, Arko, Walker & Shewmaker, Elkhart, for appellee.

CHEZEM, Judge.

### Case Summary

Appellant, Patricia L. Bechtel, appeals the Elkhart Circuit Court's Finding of Contempt.

### Issue

Three issues are raised on appeal: (1) Whether the trial court's order prohibiting Patricia Bechtel from having an unrelated male in her home overnight when she had custody of the children was enforceable when the order was not based on evidence that such periods of overnight visitation were detrimental to the children. (2) Whether the evidence presented at the contempt hearing supported the court's finding that Patricia Bechtel allowed an unrelated male in her home while she had custody of the children. (3) Whether the trial court's commitment of Patricia Bechtel to the Elkhart County Security Center for a period of thirty (30) days with all but five (5) days suspended for contempt was a punitive sanction and therefore, not a proper sanction for civil contempt proceedings.

### Facts

On August 26, 1986, Patricia L. Bechtel ("Wife") filed a petition for legal separation. On September 4, 1986, James A. Bechtel ("Husband") petitioned the court to convert the legal separation to a petition for dissolution of marriage.

On June 8, 1987, Husband filed a verified petition to modify provisional order alleging that Wife was residing with an unrelated adult male. On June 26, 1987, the Elkhart Circuit Court held a hearing on the petition. After hearing argument of counsel, but without hearing any evidence, the court entered an order that Wife should not have any male in her home when she had custody of the children.

On July 10, 1987 Husband requested an update of the home study for the purpose of determining whether Wife was allowing an unrelated adult male to reside with her

when she had custody of the children. The court ordered Ed Eichenberger, Custody Investigator to make an unannounced visit to Wife's home. On August 14, 1987, Eichenberger filed a report which stated nothing indicated that an unrelated adult male was living there on a permanent basis.

On November 10, 1987, the husband filed a petition to modify the temporary custody order and a verified showing of noncompliance with the court order which in part alleged that Wife continued to cohabit with an unrelated male while the children were present. The petition was initially set for hearing on November 13, 1987, but was not heard until February 2, 1988.

On December 1, 1987, the husband filed a second verified petition to establish a specific temporary custody order and an affidavit alleging noncompliance, which stated that Wife continued to violate the court's June 26, 1987 order. The petition was initially set for hearing on December 11, 1987 but was not heard until February 2, 1988.

At the February 2, 1988 hearing, Delbert Thornburg, a private investigator, testified that he was hired by the husband to watch Wife's residence to determine if there was an unrelated adult male ("C.H.") staying there while Wife had custody of the children. Pursuant to that employment, Thornburg conducted surveillances on October 12, 1987, October 14, 1987, October 26, 1987, November 10, 1987, and determined that the Wife, children and C.H. were present at Wife's residence until 8:30 p.m. when Thornburg ceased surveilling. On two of those occasions, Thornburg returned to the residence early in the morning—once as early as 4:15 a.m.—but discovered that the vehicle C.H. had been driving was no longer at the residence.

On November 13, 1987, Thornburg started surveillance at 6:00 p.m. and continued the surveillance until 12:30 a.m., at which time he chalked the tires of the vehicles at the residence. When Thornburg checked the residence at 6:00 a.m. on November 14, 1987, he determined that none of the vehicles had been moved.

On October 29, 1987, Thornburg testified that he started surveillance at 7:00 p.m. and ended at 5:30 a.m. the following day. During that time, Thornburg saw all of the relevant individuals enter the residence, but did not see any of them leave. During cross-examination, Thornburg admitted he told Wife's attorney that he had not been physically present at Wife's home for an entire evening. This conversation occurred sometime after November 13, 1987.

C.H. testified that he routinely went to Wife's residence after work and remained there until after the children were asleep. C.H. admitted that, on occasion, he stayed past 12:30 a.m. He denied that he stayed the entire night at any time after the June 28, 1987 court order. C.H. testified that he and Wife had seven vehicles at their disposal and that he did not use any one regularly. C.H.'s parents both testified that C.H. resided in their home during all relevant times and that he came home every night, although sometimes quite late.

Wife testified that neither C.H. nor any other male—other than her foster father—had stayed the night after the court order. She testified that the latest C.H. had stayed was 1:30 a.m.

On February 12, 1988, the court granted the dissolution of marriage and found Wife in contempt of court.

### Issue 1

The trial court is authorized to issue provisional orders in dissolution actions by Indiana Code 31–1–11.5–7 which provides in part:

(d) ... the court may issue a temporary restraining order, a custody order, or an order for possession of property to the extent it deems proper.

(f) The issuance of a provisional order shall be without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding. ... *[I]t shall terminate when the final decree is entered subject to right of appeal ...* (emphasis added)

Provisional orders, because they are not final determinations in a dissolution, are interlocutory in nature. *See Wendorf v.*

*Wendorf* (1977), 174 Ind.App. 172, 366 N.E.2d 703; *Svetich v. Svetich* (1981), Ind. App., 425 N.E.2d 191; *Phillips v. Phillips* (1988), Ind.App., 524 N.E.2d 1320.

Indiana Rules of Procedure, Appellate Rule 3(B) provides:

> ... In appeals and reviews of interlocutory orders the record of the proceedings shall be filed within thirty [30] days of the ruling ...

Here, on June 26, 1987, the trial court granted the modification of the provisional order, prohibiting Wife from having any male in her home overnight when she had custody of the children. Wife filed her motion to correct error February 22, 1988. It is evident that Wife is not attempting an interlocutory appeal from the Order of June 26, 1987. First, Wife filed a motion to correct error which would not perfect an interlocutory appeal. Indiana Rules of Procedure, Appellate Rule 3(B) and Indiana Rules of Procedure Trial Rule 59.[1] Second, Wife did not perfect her appeal within thirty (30) days from June 26, 1987 as required by Indiana Rules of Procedure, Appellate Rule 3(B).

The failure to comply with the requirements to perfect an interlocutory appeal is insufficient to establish jurisdiction. The issue is waived.

### Issue 2

■ Wife argues that the evidence presented at the contempt hearing did not support the judgment. In reviewing the contempt judgment, we will neither reweigh the evidence nor judge the credibility of witnesses. If the evidence and all reasonable inferences which may be drawn therefrom support the trial court's decision, the decision will be affirmed. *Funk v. Macaulay* (1983), Ind.App., 457 N.E.2d 223 at 230 *citing Slagle v. Slagle* (1973), 155 Ind.App. 304, 292 N.E.2d 624.

■ Delbert Thornburg, a private investigator hired by Husband, testified that on October 29, 1987 he surveilled Wife's residence from 7:00 p.m. until 5:30 a.m. the following day and noted that neither Wife

nor C.H. left the residence during that time. However, during cross-examination, Thornburg admitted that he told Wife's attorney, sometime after November 13, 1987, that he had not been physically present for an entire evening at the Wife's home. Thus, there is no evidence which can support the inference that an unrelated adult male had stayed in Wife's residence while she had custody of the children. Therefore, the evidence does not support the court's finding the wife in contempt.

### Issue 3

Since we reverse on the second Issue, we decline to discuss this Issue. However, it is within the inherent power of the trial court to fashion an appropriate punishment for the disobedience of the court's order.

We lack jurisdiction as to Issue 1. We reverse as to Issue 2.

MILLER, J., concurring with separate opinion with which ROBERTSON, J., concurs.

MILLER, Judge, concurring.

I concur in the result because I agree the evidence was insufficient to support the contempt finding, even if the possibly ambiguous term "overnight" is construed to mean from evening until dawn.

■ However, I disagree with the conclusion that issue 1 was waived. Only interlocutory orders which may be appealed as of right, *See* Ind. Rules of Procedure, A.R. 4(B); *See also* finalized partial judgments in T.R. 54(B) and 56(C), are waived by failure to appeal within the prescribed time limit. *Indiana High School Athletic Association v. Raike*, (1975) 164 Ind.App. 169, 329 N.E.2d 66. The order in question was a provisional order pursuant to Ind. Code sec. 31-1-11.5-7 and not appealable as of right.

■ In addition, the trial court erred in imposing a sentence of imprisonment (which was entirely punitive) in a civil contempt proceeding. Although disobedience

---

**1.** The court notes that a motion to correct error is no longer necessary to perfect any appeal.

Indiana Rules of Procedure, Trial Rule 59 as amended January 1, 1989.

of a court order may be indirect criminal contempt as well as civil contempt, *Denny v. State*, (1932), 203 Ind. 682, 182 N.E. 313, the court must accord the defendant the protections required by Ind.Code sec. 34–4–7–8, 9 before citing him or her for indirect criminal contempt. *See Id.*

Any remedy in a civil contempt proceeding must be coercive or remedial in nature, and for the benefit of the aggrieved party. *Pickett v. Pelican Service Associates*, (1986), Ind.App., 495 N.E.2d 245. *See also* I.L.E. Contempt sec. 8. Here, the sentence provided no benefit to Husband, and could have had no coercive effect. The disobedience, if any, had already occurred and could not be undone. Wife denied violating the order. The trial court improperly imposed the criminal contempt sentence of imprisonment as a remedy in a civil contempt action.