**Catherine PLESKA, Appellant (Respondent Below),**

v.

**Michael ZAKUTANSKY, Executor of the Estate of Peter Pleska, Deceased, Anastasia Mandziak, James G. Kallimani, Ceberal [sic] Palsy of Northwest Indiana, Hoosier Boys Town of Indiana, and University of Notre Dame, Du Lac, Appellees (Petitioners or Interested Parties Below).**

No. 3–1282A326.

Court of Appeals of Indiana, Third District.

Feb. 15, 1984.

Rehearing Denied March 21, 1984.

Michael L. Muenich, Hand, Muenich & Wilk, Hammond, for appellant.

James T. Walker, Walker, Fleming, Corbin & Greenberg, P.C., Merrillville, Anthony J. Cefali, Cefali & Cefali, Hobart, for appellee Michael Zakutansky.

Steven A. Kurowski, Merrillville, for appellee Estate of Anastasia Mandziak.

Frank A.J. Stodola, Hammond, for appellee Cerebral Palsy of Northwest Ind. and Hoosier Boys Town of Ind.

Timothy Galvin, Jr., Hammond, for appellee University of Notre Dame, Du Lac.

James G. Kallimani, appellee pro se.

STATON, Presiding Judge.

Catherine Pleska (Catherine) appeals the trial court's determination that the federal estate taxes due on the estate of Peter Pleska (Peter) be apportioned between the

probate estate and tl non-probate assets which passed to Catherine. On appeal, Catherine raises three issues:

(1) Whether Peter's Will clearly stated that all of the federal estate taxes be paid out of the probate assets;

(2) Whether the attorneys' fees and the executor's fee awarded by the trial court were excessive; and

(3) Did the trial court err in allowing a claim for legal services rendered to Peter before his death when there were no objections to the claim or the amount charged during the hearing?

## I.

### Apportionment of Taxes

After Peter died in 1976, his Will was admitted to probate. The following portions of that Will are relevant to our consideration of the issue:

"I, PETER PLESKA, being at this time of sound and disposing mind and memory and being of lawful age and a resident of Lake County, Indiana, do hereby make, publish and declare this to be my Last Will and Testament.

\* \* \* \* \* \*

### "ITEM III.

"I hereby direct that all estate and inheritance taxes be paid out of the corpus of my estate by the executor hereinafter provided for.

### "ITEM IV.

"I hereby give, devise and bequeath all my property, be the same real, personal, equitable, choses in action or mixed and wherever the same may be located as follows:

| | | |
|---|---|---|
| 1. to my cousin, KATHERINE PLESKA, of Chicago, Illinois | 50 | % |
| 2. to ANASTASIA MENDZIAK of Gary, Indiana | 20 | % |
| 3. to JAMES G. KALLIMANI of 8301 Hickory Street, Gary, Indiana | 10 | % |
| 4. to CEREBRAL PALSY of NORTHWEST INDIANA | 2½ | % |
| 5. to HOOSIER BOYS TOWN of Indiana | 2½ | % |
| 6. to the UNIVERSITY OF NOTRE DAME | 15 | % |

a) to be used as a memorial fund in the name of 'The Pleska Family Memorial Fund For The Blind'

b) I ask that the university officials help by its standards:

1. Any boy or girl who is blind and is needy and wants to attend the University of Notre Dame

2. The money is to be invested as the university officials see fit and all moneys, including interest, are to be used for helping blind and needy individuals who want to get an education at the University of Notre Dame."

(Record, pp. 51–52).

The value of Peter's probate estate, after payment of expenses, was $57,451.98. Property which passed to Peter's cousin Catherine outside the probate estate, but was included in Peter's gross estate for estate tax purposes totaled $299,155.13 in value. Federal estate taxes amounted to approximately $76,400.00,[1] the bulk of which was attributable to the property which passed to Catherine outside the Will.

Michael Zakutansky (executor), the executor of Peter's Will, attempted to apportion the federal estate taxes and sought to have Catherine pay the portion of the taxes attributable to the property she received outside of the probate estate. Catherine refused, claiming that Peter's Will required the taxes to be paid from the probate estate. The trial court determined that the apportionment statutes applied. This dispute has involved numerous legal proceedings including a suit filed in federal district court by Catherine and subsequently dismissed, and an appeal taken to this Court by Catherine and subsequently dismissed, in addition to lengthy discovery and numerous hearings in the probate court proceedings which led to this appeal. Finally, the trial court approved the executor's final

---

**1.** Certain bequests under the will qualified as charitable deductions for federal tax purposes.

The property which passed to Catherine outside the will consisted of four joint bank accounts.

account over Catherine's objections and Catherine appealed.[2]

■ Catherine contends that Peter's Will requires that all taxes be paid out of the probate property, including any taxes attributable to property which passed to her outside the Will. We disagree. Indiana has long favored apportionment of federal estate taxes. *See Stoner v. Custer* (1969), 252 Ind. 661, 251 N.E.2d 668. Our present statute governing the apportionment of federal estate taxes among probate and non-probate assets provides:

"Unless a decedent shall otherwise direct by will, the federal estate tax [U.S.C., tit. 26, § 2001 et seq.] imposed upon decedent's estate, shall be apportioned among all of the persons, heirs and beneficiaries of decedent's estate who receive any property which is includable in the total gross estate of said decedent for the purpose of determining the amount of federal estate tax to be paid by said estate, Provided, That no part of the federal estate tax shall be apportioned against property which, in the absence of any apportionment whatsoever, would qualify for any charitable, marital or other deduction or exemption, nor against recipients of such property on account thereof."

IC 1976, 29–2–12–2 (Burns Code Ed.).[3]
The personal representative is entitled to recover from each heir or beneficiary their share of the apportioned estate taxes. IC 1976, 29–2–12–3 (Burns Code Ed.); IC 1976, 29–2–12–6 (Burns Code Ed.). Therefore, federal estate taxes due on Peter Pleska's estate must be apportioned among his probate and non-probate assets unless his Will clearly directs otherwise.

Whether language such as that contained in Item III of Peter's Will renders the apportionment statutes inapplicable is a question which has not yet been addressed in Indiana. Jurisdictions which have construed similar clauses have reached conflicting results, as have courts within the same jurisdiction. *See* 69 A.L.R.3d 122, 269–272; 42 Am.Jur.2d § 347 *et seq.*[4] The phrase "all taxes" has been construed as including taxes assessed against both probate and non-probate property or as including only taxes assessed against property passing under the Will:

"A direction that all transfer, estate, inheritance, and succession taxes be paid out of the residuary estate means exactly what it imports. Standing by itself, the word 'all' means all and nothing less than all. It prohibits any apportionment of the death taxes on every form of gift or transfer contained in the gross taxable estate whether passing under the will or outside the will . . .

However, there are cases to the contrary, even within the same jurisdictions, particularly under a statute which limits a direction as to apportionment or nonapportionment to property passing under the instrument containing such direction unless the instrument otherwise directs. Thus, it has been declared that a provision in a will that all taxes be paid out of the residuary or general estate applies only to property passing under the will unless it specifically refers to other property, and that it has no effect on inter vivos dispositions which for one reason or another are drawn into the gross estate for tax purposes. . . ."

69 A.L.R.3d 122, 270–71 (footnotes omitted).

■ In construing a will, our primary objective is to ascertain and give effect to the intent of the testator. *Diaz v. Duncan* (1980), Ind.App., 406 N.E.2d 991, 1000. If the language of the will creates an ambiguity, we must first determine whether the

---

2. The parties have filed a "Stipulated Synopsis of Court Record and Other Related Proceedings." (Record, pp. 203–210).

3. The statute also provides:
"This chapter shall not be applicable to estates where the decedent has, by will, provided for the payment of federal estate tax either by the recipients or from a particular fund."
IC 1976, 29–2–12–7 (Burns Code· Ed., 1983 Supp.).

4. Both parties have cited and discussed numerous cases from other jurisdictions which emphasize the conflicts in result.

testator's intent is made clear in other provisions of the will. *Donahue v. Watson* (1980), Ind.App., 411 N.E.2d 741, 749 (*trans. denied*). Although we may be aided by previous cases, the meaning of each will is determined by its own particular facts. *Hayes v. Second Nat. Bank of Richmond* (1978), 176 Ind.App. 299, 375 N.E.2d 647. Peter left very specific bequests of his probate property. For example, his bequest to Notre Dame includes a statement that the fund is to be used as a memorial fund and establishes standards for the disbursement of money from the fund. The specificity of Peter's bequests supports a determination that he did not intend for his probate estate to be exhausted by the payment of taxes on the non-probate assets. The trial court's interpretation that Item III of Peter's Will refers to taxes assessed against the property disposed of under the Will and not to taxes assessed against the non-probate property is consistent with Peter's intent, as it is indicated by the other Will provisions. Thus, the provision in Peter's Will regarding the payment of taxes does not clearly provide that the apportionment statutes do not apply. The trial court was correct, therefore, in determining that the federal estate taxes were to be apportioned.

## II.

Fees Awarded to Attorneys and Executor

██ Catherine contends that the trial court's award of $20,400 in fees to Anthony Cefali (Cefali) and James Walker (Walker) for legal services rendered to the estate and $4,900 in executor's fees is excessive. She also argues that Walker was not expressly hired by the executor and therefore is not entitled to any payment. In support of this argument, Catherine cites our language in *Estate of Anderson v. Smith* (1974), 161 Ind.App. 480, 316 N.E.2d 592 in which we held that an attorney could be compensated by the estate only if he was hired by the administrator or on the administrator's express authorization, unless the estate acquiesced in or ratified the employment or the attorney for the estate had real

or apparent authority to hire the attorney on behalf of the estate. The record in this case shows that, on January 21, 1977, the trial court approved the petition of Cefali to retain independent counsel, who would be paid by the estate, to represent Cefali at a deposition sought by Catherine. The record further reveals the executor's testimony that, early in 1977, he hired Walker to act as co-counsel for the estate. Therefore, we do not agree with Catherine's assertion that Walker's employment on behalf of the estate was not authorized.

██ Absent a specific provision in the will, IC 1976, 29–1–10–13 (Burns Code Ed.) authorizes the court to fix reasonable fees for the attorney and the executor. The determination of such an amount lies within the sound discretion of the trial court and will not be overturned absent an abuse of that discretion. *Mikesell v. Mikesell* (1982), Ind.App., 432 N.E.2d 55, 58 (*trans. denied*). We also recognize that the trial judge possesses personal expertise which he uses in determining reasonable attorney fees. *Id.* In determining the value of the services rendered by the attorneys and the executor, the trial judge may consider many factors, including the labor performed, the nature of the estate, and difficulties in recovering assets. *Matter of Estate of Newman* (1977), 174 Ind.App. 537, 369 N.E.2d 427.

Peter's Will was admitted to probate in January, 1976. Since that time, the attorney and the executor have been embroiled in legal proceedings. Once the executor determined that the federal estate taxes should be apportioned, the legal proceedings have been adversarial in nature and include a federal court suit instituted by Catherine, an interlocutory appeal brought by Catherine, as well as numerous motions and petitions, and hearings on those motions and petitions.

██ Pursuant to a motion and following a hearing, the trial court awarded partial payment of $2,500.00 to the executor and $10,400.00 to the attorneys on January 31, 1978. On May 21, 1982, the trial court

awarded an additional $10,000.00 to the attorneys and $2,400.00 to the executor. At a hearing on April 13, 1982, the attorneys testified that they had spent approximately two hundred forty-two hours on the case since January, 1978. The executor testified that he had spent sixty hours on administration of the estate during that same time. Attorney William Martin, testifying as an expert witness, concluded after a review of the case that the reasonable value of the attorney's services would exceed the $10,000.00 sought and that the $3,000.00 sought by the executor was reasonable. The record contains evidence to support the trial court's award; therefore, we find no abuse of discretion.[5]

### III.

### Conflict of Interest

 Catherine contends that the trial court erred in approving a claim submitted by Justin Waitkus (Waitkus) and Cefali for $5,000.00 for services rendered to Peter before his death. In support of this contention, Catherine argues that the claim was approved when the estate was potentially insolvent and that Cefali should not have submitted a claim and simultaneously acted as attorney for the estate.[6]

This claim was timely filed on March 8, 1976 and notice was given to interested parties. On July 16, 1972, following a hearing, the trial court determined that the claim should be paid. Catherine made no objection before the claim was granted;[7] apparently, she did not object until several years later. By failing to make a timely objection to payment of the claim, Cather-

ine waived her right to later attack the payment.

 Catherine contends that the notice given to her did not reflect the potential insolvency of the estate or the conflicting interests of Cefali. As we have previously discussed, the only potential for insolvency arose when Catherine attacked the apportionment of federal estate taxes. We fail to see how failure to notify her that the estate might be insolvent if she failed to pay the taxes assessed against the non-probate property which she received would justify a determination that the claim should not have been paid.

 Moreover, Catherine presents no more than the mere allegation of conflicting interest on the part of Cefali. As attorney to Peter before his death, Cefali was entitled to be paid for his services. Catherine has shown no actual conflict between Cefali as claimant and Cefali as attorney for the executor.[8] Therefore, we do not agree with Catherine's contention that the claim should not have been paid.

Affirmed.

GARRARD and HOFFMAN, JJ., concur.

---

5. Catherine argues that the award in this case exceeds the standards established in *Mikesell v. Mikesell, supra.* In *Mikesell,* we determined that the trial court had not abused its discretion in granting less than the fees sought, based upon the particular facts of that case. In this case, we likewise determine that the trial court did not abuse its discretion in view of the particular circumstances, which include a gross estate, for federal tax purposes, well in excess of $300,000.00.

6. Catherine does not attack the amount of the claim. The other heirs named in Peter's Will did not object to the claim before payment nor do they now dispute the propriety of the payment of the claim.

7. Any interested person can object to a claim filed against the estate before it is paid. IC 1976, 29-1-14-14 (Burns Code Ed., 1983 Supp.).

8. Peter's Will specifically requests that Cefali and Waitkus serve as legal advisors to the executor. (Record, p. 52).