**Terri PHILLIPS, Appellant
(Petitioner Below),**

**v.**

**Scott PHILLIPS, Appellee
(Respondent Below).**

**No. 48A02–8704–CV–151.**

Court of Appeals of Indiana,
Second District.

June 30, 1988.

Ronald L. McNabney, Anderson, for appellant.

John M. Blevins, Anderson, for appellee.

SULLIVAN, Judge.

Terri Phillips (Mother) appeals the trial court's assessment of attorney fees against her in favor of Scott Phillips (Father) for defense of his visitation rights with respect to their child, Z.S.P.

We affirm.

Mother petitioned for divorce from Father on April 18, 1986, and, because she was unemployed, sought temporary support for Z.S.P. and attorney fees. On May 5, the parties agreed and the court approved, among other things, that Mother would have the care and custody of Z.S.P. with "[v]isitation reserved to [Father] in reasonable amount/time/and place, but not less than 10:00 A.M. to 5:00 P.M. every Saturday and 5:00 P.M. to 7:00 P.M. on Wednesday, at his parents' home." Record at 15. In addition, Father agreed to not harass Mother and to pay $50 per week for support and $250 to Mother's attorney (with the balance of Father's attorney fee obligation to be determined at final hearing). Four days later, on May 9, Mother filed an Emergency Petition to Terminate Visitation, setting forth as grounds for relief that Father had allegedly molested Mother's two minor daughters by a previous marriage.

After hearing held on May 14, the Commissioner purported to modify the parties' May 5 agreement as follows:

"Visitation reserved to [Father] in reasonable amount/time/and place; but not less than 10:00 A.M. to 5:00 P.M. every Saturday at his parents' home; during such visitation, one or both of his parents shall be present. Nothing herein will be interpreted to prevent [Father] from providing transportation to and from the respective homes." Record at 23.

Although it is not clear whether the court ever adopted the Commissioner's suggest-

ed modification and issued the proper order in the dissolution proceedings, there is evidence that it was adopted in an unrelated CHINS proceeding.

On Saturday, June 7, Mother refused Father visitation with Z.S.P. whereupon Father filed an Affidavit for Citation and a Request for Emergency Hearing, seeking to hold Mother in contempt. Mother followed up the next day with a Second Emergency Petition to Terminate or Modify Current Order of Visitation. Affixed to this Petition was a June 6 letter from the social worker counseling Mother and her daughters, wherein she expressed her concern about the adequacy of the supervision over Z.S.P. After an evidentiary hearing, the Commissioner issued findings of fact, conclusions of law and recommendations, the latter of which the trial court approved and ordered:

"1) The Commissioner recommends that [Mother] be found in contempt of this Court on account of her denial of [Father's] visitation rights June 7, 1986, and that in punishment thereof she be incarcerated in the Madison County Jail for a period of 5 days, [sic] He further recommends that such sentence be suspended on condition of strict compliance with all orders of this Court.

2) The Commissioner recommends that the Court reaffirm its visitation order of May 16, [sic][1] 1986; provided, however, one of the grandparents (or other responsible adult acceptable to [Mother] shall accompany [Father] during his transport of the child. The grandparents shall supervise visitation and one or both of them shall be present at all times. They shall be responsible for the safety of the child during visitation.

3) The grandparents shall within 10 days arrange for counseling sessions with Elaine Kardatzke at the Exchange Club child abuse center. Mrs. Kardatzke is requested to familiarize the grandpar-

---

1. The Commissioner's findings indicate the contempt citation was issued for a violation of a court order issued May 16, 1986. We find no such order in the record, only the Commissioner's report of May 14, 1986.

ents with child molestation, the profile of the typical child molester (if any), and any danger signs of which they should be aware." Record at 38.

On March 12, 1987, Mother filed a third Verified Petition for Emergency Order Terminating Respondent-Father's Visitation, this time setting forth that Father had just been convicted of molesting his two minor stepdaughters and was threatening to leave the jurisdiction with Z.S.P. In addition, Mother filed a petition to hold Father in contempt for threatening and harassing her, contrary to the terms of the original agreement. Hearing was had the next day before the court. Evidence at the hearing included testimony that Father was harassing Mother when he picked up Z.S.P. and that "unacceptable" adults would often accompany Father to Mother's home to pick up Z.S.P. rather than his parents. The court concluded:

"The Court finds no emergency and declines to terminate visitation. However, for further visitations, pickup and delivery of the child shall be made by the paternal grandparents." Record at 78.

On March 20, Father's counsel filed an unverified petition for attorney fees, setting forth a chronology of the events on the issue of visitation: the May 5, 1986 Agreed Entry; Mother's May 9, 1986 petition; Father's June 9, 1986 petition for contempt; Mother's June 10, 1986 petition; Mother's March 12, 1987 petition. However, counsel's petition sets forth only the following sums for fees:

"5. That on June 13, 1986, the commissioner found [Mother] to be in contempt of the court, and as a result of the contempt of [Mother] [Father] incurred attorney fees in the sum of Three Hundred Thirty Dollars ($330.00).

*   *   *   *   *   *

8. That as a result of the frivolous and harassing nature of [Mother's] Petition for Emergency Order Terminating Respondent-Father's Visitation, [Father] incurred additional attorney fees in the sum of One Hundred Seventy-Five Dollars ($175.00) constituting interviews, preparation, and court appearance in defense of his rights of visitation with his son.

WHEREFORE, [Father] prays for an order of attorney fees in the sum of Five Hundred Five Dollars ($505.00) and for all other relief proper in the premises." Record at 82–83.

Shortly thereafter, Father also filed a verified petition to abate support payments because he was unemployed and awaiting sentencing. (Father had formerly worked for Consumer Electronics, Inc. at $7.00 per hour.) Mother filed an objection to Father's petition for attorney fees, pointing out that she too was unemployed. Shortly thereafter, the trial court entered the following:

"This matter being under advisement on [Father's] petition for attorney fees (incurred in the defense of his visitation rights and the agreed entry of 5/5/86), and the Court being duly advised now grants said petition and directs [Mother] to pay [Father's] attorney the sum of $400, within sixty days of today's date, to be applied to his fees in this cause. (Written Memo from Court to Counsel issued.)" Record at 91.

Because the court's entry is not illuminating, we also reproduce the pertinent parts of the memo accompanying the entry:

"I have reviewed the various pleadings filed by the petitioner subsequent to the agreed entry of May 5, 1986, along with the record of hearings and docket orders made in response to those pleadings.

Within days after the agreed entry of May 5, 1986, the petitioner sought to terminate and circumvent the respondent's right of visitation. In her defense, I believe the wife was genuinely fearful. In that sense, her efforts were not in bad faith. Nevertheless, without exception, the petitioner's various actions were found by the Court to be without merit:

(1) On May 14, 1986, the Commissioner denied her petition to terminate and

made no substantial change in the visitation order.

(2) Likewise, her second request to modify the provisional order was found by the Commissioner to be unconvincing, and on June 13, 1986, she was found to be in contempt of the Court's visitation order.

(3) On March 12, 1987, the petitioner filed a verified petition to terminate visitation. On March 13, 1987, the presiding Judge conducted a hearing and found no evidence of an emergency.

Because the petitioner's fears and allegations were taken seriously, the respondent was repeatedly called into Court, and compelled to employ counsel, to defend his natural, statutory, and agreed right to visitation. The respondent should not bear the full cost of his defense when, on three occasions, the petitioner's efforts were rebuffed by the Court and, on one occasion, she was found to be in contempt for failing to permit Court-ordered visitation." Record at 92.

Because there had not been a final determination in the dissolution, Mother properly took this interlocutory appeal contesting the order.

The issue before us is whether the trial court erred when it ordered Mother to pay a portion of Father's attorney fees incurred with respect to Father's visitation rights. After examining the statutory authority and analogous case law, we conclude that it did not.

The statute governing this case is I.C. 31-1-11.5-24(c) (Burns Code Ed. Repl. 1987):

"(c) In any action filed to enforce or modify an order granting or denying visitation rights, a court may award reasonable attorney's fees, court costs, and other reasonable expenses of litigation. In determining whether to award reasonable attorney's fees, court costs, and other reasonable expenses of litigation, the court may consider among other factors:

(1) Whether the petitioner substantially prevailed and whether the court found that the respondent knowingly or intentionally violated an order granting or denying rights; and

(2) Whether the respondent substantially prevailed and the court found that the action was frivolous or vexatious."

Because this particular portion of I.C. 31-1-11.5-24 was only recently enacted, there is no case law interpreting it. However, I.C. 31-1-11.5-16(a) (Burns Code Ed. Repl. 1987) which generally regulates attorney fee awards for dissolution actions is similar:

"(a) The court from time to time may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceedings or after entry of judgment. The court may order the amount to be paid directly to the attorney, who may enforce the order in his name."

Cases interpreting I.C. 31-1-11.5-16 are therefore instructive in interpreting I.C. 31-1-11.5-24. See Roe v. Doe (1972) 2d Dist., 154 Ind.App. 203, 289 N.E.2d 528 (dissolution cases analogous to paternity cases).

We note that I.C. 31-1-11.5-24 is a discretionary statute, not mandatory: "a court *may* award. . . ." See Castor v. Castor (1975) 2d Dist., 165 Ind.App. 520, 333 N.E.2d 124. Therefore, the only inhibition to the trial court's action under the statute is its judicious exercise of discretion. See, e.g., Welling v. Welling (1971) 257 Ind. 120, 272 N.E.2d 598; McCallister v. McCallister (1986) 2d Dist.Ind.App., 488 N.E.2d 1147; Castor v. Castor, supra; DeLong v. DeLong (1974) 2d Dist., 161 Ind.App. 275, 315 N.E.2d 412. We will reverse only if we determine that the trial court abused its discretion, i.e., that its decision was contrary to " 'the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions

to be draw[n] therefrom'...." *Whitman v. Whitman* (1980) 2d Dist.Ind.App., 405 N.E.2d 608, 610, quoting *Marshall v. Reeves* (1974) 262 Ind. 107, 115, 311 N.E.2d 807, 812.

■ Because Mother is contesting the award of attorney fees, not the amount awarded,[2] we review a rather fluid and broad range of factors within the trial court's consideration. *See, e.g., Wendorf v. Wendorf* (1977) 3d Dist., 174 Ind.App. 172, 366 N.E.2d 703; *DeLong v. DeLong, supra,* 315 N.E.2d 412. As with all other attorney fee awards in dissolution cases, the trial court must look at all the circumstances before it, *McCallister v. McCallister, supra,* 488 N.E.2d 1147, and may not confine itself only to the reasonableness of dollar amount involved. *See Farley v. Farley* (1973) 2d Dist., 157 Ind.App. 385, 300 N.E.2d 375, *trans. denied.* Unlike the ordinary dissolution case, however, the case here also includes two statutory factors which may be considered "among other factors:"

> "(1) Whether the petitioner substantially prevailed and whether the court found that the respondent knowingly or intentionally violated an order granting or denying rights; and
>
> (2) Whether the respondent substantially prevailed and the court found that the action was frivolous or vexatious." I.C. 31–1–11.5–24(c)(1), (2).

In order to apply these factors it is clear that both parts of either subsection must be present before the factor may prove determinative. Authority exists which would seem to call for a specific finding by the court of the second part of each subsection. *See Coster v. Coster* (1983) 1st Dist. Ind.App., 452 N.E.2d 397, 404 (Ratliff, J. concurring) (maintenance); *In Re Marriage of Ginsberg* (1981) 2d Dist.Ind.App., 425 N.E.2d 656 (custody modification). However, no direct authority exists for this requirement. We therefore conclude that the statute merely directs the court to consider these factors, not to make special findings prior to awarding attorney's fees.[3] In reaching this conclusion, we draw upon *Farthing v. Farthing* (1979) 2d Dist., 178 Ind.App. 336, 382 N.E.2d 941, 944, *trans. denied,* in which we stated:

> "The statute [I.C. 31–1–11.5–9(c) (Burns Code Ed.Supp.1978)] merely compels the trial court to make inquiry and 'find' whether there exists incapacity and material effect upon the spouse's self-supportive ability before awarding maintenance. The 'finding' required by the statute is implicit in the grant or denial of maintenance and need only be supported by sufficient evidence of record."

Likewise, in the present case, a judgment awarding or denying attorney fees implies an affirmative finding. Accordingly, we look to the evidence of record in reviewing the trial court's decision.

Case law indicates that a trial court's memo to counsel is ordinarily not a part of the record, *Himelstein Brothers, Inc. v. Texas Co.* (1955) 125 Ind.App. 448, 125 N.E. 2d 820, and that findings of fact are not required, if not requested, in making an award of attorney fees in dissolution cases. *State ex rel. Paxton v. Porter Superior Court* (1984) Ind., 467 N.E.2d 1205; *Greiner v. Greiner* (1979) 3d Dist. 179 Ind.App.

---

**2.** The *amount* of attorney fees awarded is also reviewed in terms of the trial court's discretion. *See, e.g., In re Marriage of Gray* (1981) 3d Dist. Ind.App., 422 N.E.2d 696. However, the factors involved are considerably different, entailing a comparison with the definition of "reasonable" attorney fees under D.R. 2–106. *See Canaday v. Canaday* (1984) 3d Dist.Ind.App., 467 N.E.2d 783; *In re Marriage of Gray, supra; see also Pleska v. Zakutansky* (1984) 3d Dist.Ind.App., 459 N.E.2d 745, *trans. denied* (estate); *Mikesell v. Mikesell* (1982) 4th Dist.Ind.App., 432 N.E.2d 55 (estate); *Fox v. Galvin* (1978) 2d Dist., 177

Ind.App. 654, 381 N.E.2d 103. There appears to be some confusion between the factors for the actual awarding of fees and the factors for determining the reasonableness of the amount of those fees.

**3.** Interpretation of a trial court order and appellate review would be greatly facilitated by a requirement for specific findings. However, we do not deem it within our prerogative to invalidate this order because findings were not made.

61, 384 N.E.2d 1055; *Smith v. Smith* (1953) 124 Ind.App. 343, 115 N.E.2d 217, *trans. denied; see also* Ind. Rules of Procedure, Trial Rule 52. However, we may seek guidance from the trial court's comments in order to establish what evidence it considered and the conclusion it reached in awarding fees. *See, e.g., Rice v. Rice* (1984) 3d Dist.Ind.App., 460 N.E.2d 1228; *Greiner v. Greiner, supra.*

■ The court's memo clearly reflects consideration of all three of Mother's petitions and Father's contempt petition when it awarded fees even though Father's request only set forth fees for the contempt action and Mother's third petition of March, 1987. That fact is of no import, however, because as earlier noted Mother does not contest the *amount* awarded. Of the three petitions Mother filed, the trial court commented, "I believe the wife was genuinely fearful. In that sense, her efforts were not in bad faith. Nevertheless, without exception, the petitioner's various actions were found by the Court to be without merit...." Record at 92. These statements appear to deal with the second of the two statutory factors set forth in I.C. 31-1-11.5-24(c), under which if Father substantially prevailed in the matters, the trial court must also determine Mother's action to be frivolous or vexatious. The evidence in the record may support the conclusion that Father substantially prevailed in Mother's petitions. Although the court did modify the orders each time Mother came to court by curtailing and/or limiting Father's rights in accordance with Mother's concerns, the court never terminated Father's visitation with Z.S.P. The court in its statements about Mother's intentions never forthrightly declared her efforts either "vexatious" or "frivolous." Rather, it acknowledged Mother's concern for Z.S.P. yet chastised her for filing petitions that were "without merit." Nevertheless, the court's memo does reveal that with respect to Mother's three petitions an inquiry was conducted pursuant to I.C. 31-1-11.5-24(c). As we have previously stated, the court need not specifically find that one of the statutory factors is present.

The court's memo is clear with respect to Father's petition for contempt. The court awarded fees, in part, because Mother was found in contempt in June, 1986. The evidence reveals that this contempt action was instituted by Father. Therefore, we look to the first statutory factor in I.C. 31-1-11.5-24(c), i.e., that Father substantially prevailed in his action and the trial court found Mother "knowingly or intentionally violated an order granting or denying rights." Although vague statements of rationale in these matters complicate the review process (see footnote 3, *supra*), the trial court's statement, "she was found to be in contempt for failing to permit court-ordered visitation," [4] carries sufficient implication of Mother's intentions and wrongdoing to justify the court's conclusion. The trial court therefore did premise this part of its award upon a valid factor.

The remainder of the record and a consideration of the totality of the circumstances leads to the conclusion that the trial court did not, as a matter of law, abuse its discretion. The circumstances of utmost import here are the economic conditions and resources of the parties. The record demonstrates that although Father had been employed at $7.00 per hour at the time Mother filed for dissolution, at the time of his petition for fees he was no longer employed and was awaiting sentencing. It must be noted however that there is counterbalancing evidence. The record establishes that Mother is unemployed, that she receives no support for her two daughters by previous marriage, and that Father had petitioned to abate support payments to Z.S.P. Mother may not have the

---

**4.** Technically, this conclusion is faulted because the contempt was based on the "order" of May 14, 1986, issued by the Commissioner. This was not an enforceable order, not ever having been adopted and ordered by the trial court. However, the Commissioner's power was never challenged, and we accept the order's validity upon the parties' submission to his *de facto* authority. *See State ex rel. Smith v. Starke Circuit Court* (1981) 275 Ind. 483, 417 N.E.2d 1115.

wherewithal to pay her own fees, let alone Father's, and Father did make an agreement of record to pay a portion of Mother's attorney fees in the dissolution. That had we been in the position of the trial court and might have reasonably concluded that attorney fees should not be awarded under these circumstances does not justify a reversal of the award made. We are unable to find an abuse of discretion.

Father argues that Mother's counsel's statements to the effect that he would pay any costs or expenses Mother incurred by reason of the contempt are sufficient to warrant an award to Father. It would be dangerous precedent to consider Mother's counsel as a source of income to her. Even though advised by counsel to ignore the trial court's visitation order, Mother is still a free agent and took upon herself the consequences of her actions. She was the party held in contempt, not counsel. Therefore, we do not rely upon these statements to support our affirmance of the award of attorney's fees to Father.

The order is hereby affirmed.

BUCHANAN and HOFFMAN, JJ., concur.