ESTATE OF Edwin M. RANSBURG,
Deceased, Lenna Ransburg,
Executrix, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. IP 88–1440.

United States District Court,
S.D. Indiana,
Indianapolis Division.

Dec. 12, 1990.

Theodore J. Esping, Baker and Daniels, Indianapolis, Ind., for Ransburg, Edwin Estate.

Deborah J. Daniels, U.S. Atty., Indianapolis, Ind., Peter Sklarew, Trial Atty. Tax Div., U.S. Dept. of Justice, Washington, D.C., for U.S.

ENTRY

DILLIN, District Judge.

This matter comes before the Court on plaintiff's motion for summary judgment and defendant's motion for partial summary judgment or summary judgment. For the following reasons, the Court denies plaintiff's motion for summary judgment, grants defendant's motion for partial summary judgment and denies defendant's motion for complete summary judgment.

*Background*

This dispute involves the manner of computation of the net taxable estate used in determining federal estate tax. The first issue in this case, as framed by the parties in their Stipulation of Facts, is whether, under the terms of the will (the Will) of Edwin M. Ransburg (Ransburg), and in light of applicable Indiana law, federal estate taxes and state inheritance, succession, legacy, or estate taxes (collectively referred to as "death taxes") are effectively borne in proportionate part by all residuary legatees, including Ransburg's surviving spouse (Plaintiff) and the Menninger Foundation, a charitable beneficiary, so as to reduce amounts payable to these beneficiaries and, accordingly, the marital and charitable deductions allowable under Title 26 U.S.Code (Internal Revenue Code) Sections 2056 and 2055 respectively.

Edwin M. Ransburg died testate on May 20, 1984. Various provisions of his Will are relevant to the disposition of this case. Article I of his Will directs the Executrix to pay all of Ransburg's debts, funeral expenses, and expenses of administering the estate. Article II, which is the tax clause, provides the following:

> I direct my Executrix to pay all estate, inheritance and succession or other taxes, whether state or federal, which may be assessed as a result of my death and without regard to whether such taxes be payable by my estate or by any beneficiary or beneficiaries under this Will.

Article III grants the Executrix certain powers. Article IV is a bequest to Evan Evans of $100,000. Article V is the residuary clause, and provides that the "rest,

residue, and remainder" of the estate be bequeathed one-half to his wife, and the other half of the residue divided in equal thirds (sixths of the whole residue) among the Menninger Foundation, and Ransburg's two children by a prior marriage (the Ransburg Children). Article V also contains a provision for division of the residue in the event that Ransburg was predeceased by his wife. The residue would then be divided in equal one-sixth shares among the Menninger Foundation, each of the two Ransburg Children, and Ransburg's three step-children.

The IRS assessed, and the Executrix paid, federal estate tax in the amount of $648,523 on a net taxable estate determined by the IRS at $2,153,228. The figure of $648,523 reflects the IRS's position that the Will requires the subtraction of all death taxes before formulating the residue and applying the appropriate fractions.

Plaintiff seeks a refund in the amount of $213,685.32. According to the Stipulation of Facts and the defendant's brief, there are three bases for seeking the refund. The first involves the apportionment issue, as described above. The second concerns the amount of deductible interest paid on an additional tax assessment which the plaintiff agreed to on May 11, 1988. According to the defendant, this matter has been resolved. The third basis defendant describes is the deductibility of additional attorney fees and administrative costs of administration that may have been incurred and paid after December 31, 1987, and not previously allowed. Finally, the defendant mentions one other potential issue reserved for subsequent proceedings which has been newly raised by counsel for the United States (rather than by the IRS during earlier proceedings). This last issue concerns whether certain real property taxes deducted on the estate's income tax returns and relating to periods after the decedent's death may also be deducted on the federal estate tax return.

During the course of the administration of the estate, various disputes arose between Lenna Ransburg and the Ransburg Children, some of which were resolved in a December 21, 1988 Settlement Agreement, which provided for distribution to the Ransburg Children of $1 million each. The defendant now frames a second defense, referred to as the "settlement issue," as follows: whether, under the settlement agreement reached between the decedent's surviving spouse and his children, and agreed to by the Menninger Foundation, the marital and charitable beneficiaries have surrendered to the decedent's children property interests of sufficient value that the marital and charitable deductions must, pursuant to Treasury Regulations (26 C.F.R.) §§ 20.2056(e)–2(d) and 20.2055–2(d), be reduced to a point where the plaintiff has underpaid, rather than overpaid, the federal estate tax properly applicable to the decedent's estate. According to the defendant, a ruling in its favor on this issue would resolve the case completely, rendering moot the issues concerning real property taxes and additional administrative expenses.

*Discussion*

The Apportionment Issue

■ Federal estate tax is a debt of the estate, and is imposed on the decedent's taxable estate as a whole. *Indiana Department of State Revenue v. Estate of Cohen,* 436 N.E.2d 832 (Ind.App.1982); Internal Revenue Code § 2001(a). Indiana law provides for an equitable apportionment of federal estate tax imposed on a decedent's estate at Ind.Code § 29–2–12–2 (1982) (the Apportionment Statute):

Unless a decedent shall otherwise direct by will, the federal estate tax imposed upon decedent's estate, shall be apportioned among all of the persons, heirs and beneficiaries of decedent's estate who receive any property which is includable in the total gross estate of said decedent for the purpose of determining the amount of federal estate tax to be paid by said estate, Provided, That no part of the federal estate tax shall be apportioned against property which, in the absence of any apportionment whatsoever, would qualify for any charitable, marital or other deduction or exemption,

nor against recipients of such property on account thereof.

The Apportionment Statute applies unless a) the decedent directs otherwise by will, Ind.Code § 29–2–12–2, or b) the will provides for the payment of federal estate tax either by the estate or by the residue of the estate, Ind.Code § 29–2–12–7. The plaintiff argues that the Will makes no such direction or provision, and that therefore the Apportionment Statute applies. The defendant claims that the Will clearly directs that the death taxes be taken "off the top," that is, before the formulation of the residue. Under the after-tax division of the estate as contemplated by the defendant, the residuary beneficiaries would share ratably the federal estate tax burden, and the marital and charitable bequests and deductions would correspondingly be reduced. Plaintiff's method preserves the marital and charitable bequests free from the impact of the federal estate tax, and causes the Ransburg Children, as remaining beneficiaries, to bear the tax burden.

■ In construing a will, the court's primary purpose is to ascertain and give effect to the intention of the testator. *Stoner v. Custer*, 252 Ind. 661, 251 N.E.2d 668, 671 (1969), *reh'g denied*, 252 Ind. 661, 253 N.E.2d 231 (1969); *Diaz v. Duncan*, 406 N.E.2d 991, 1000 (Ind.App.1980). If the language used in a will creates an ambiguity, the court must first determine if the testator's intention is clearly manifested in the other provisions of the will. *Donahue v. Watson*, 411 N.E.2d 741, 749 (Ind.App.1980).

The defendant argues that Article II of Ransburg's Will clearly directs that death taxes be taken "off the top", thereby rendering the Apportionment Statute inapplicable, and likens the instant Will to that construed in *Matter of Estate of Kirby*, 498 N.E.2d 64 (Ind.App.1986). In *Kirby*, the court found that the residuary clause of the will directed that federal taxes be paid out of the residuary estate, thereby rendering the Apportionment Statute inapplicable. Article V of Kirby's will provided the following:

After the payment of all expenses, taxes, fees, Court costs and bequests, as hereinabove set forth, I direct that the balance and residue of my estate be divided into five (5) equal parts.

*Kirby*, 498 N.E.2d at 65. The Indiana Court of Appeals agreed with the probate court that this provision clearly and unambiguously provided that the residuary legatees receive their bequests subject to payment of all taxes, including federal estate taxes.

The plaintiff argues that the tax clause here is ambiguous, and that the case is controlled by *Pleska v. Zakutansky*, 459 N.E.2d 745 (Ind.App.1984). *Pleska* involved a dispute between the decedent's cousin and certain residuary legatees. In construing the will, the court found the tax clause, including the phrase "all taxes," ambiguous as to whether taxes should be applied against both property passing under the will and non-testamentary transfers. The court determined that the specificity of requests in the residuary clause supported the conclusion that the testator did not intend for the probate estate to be exhausted by the payment of taxes on the non-probate estate. Therefore, the court concluded, the Apportionment Statute would apply, and both parts of the estate would bear estate taxes.

■ While it is true that Article II of Ransburg's will lacks specific reference to the residue, the Court finds that it is more than an administrative directive, and, along with the residuary clause it expresses the testator's intent that death taxes be paid "off the top" of the residuary.

■ First, the tax clause effectively overrides the Indiana inheritance tax scheme. (Codified at Ind.Code § 6–4–1–1 *et seq.*) Normally, the inheritance tax is "levied on each distributee's share and not paid from the residue unless the will so directs." *Kirby*, 498 N.E.2d at 66. Here, the Will directs payments "without regard to whether ... payable by my estate or by my heirs under this will." Thus, the estate had to pay state inheritance taxes before the formulation of the residuary—it had to pay off the top—contrary to the usual

method wherein the residuary is formed and then each distributee pays the appropriate portion of tax. As defendant observes, it would be inconsistent for the inheritance tax, normally applied to each bequest, to be paid in a manner that reduces all residuary legatees' distributions ratably, while having the estate tax borne exclusively by the decedent's children.

Second, the fall-back provision in the residuary clause in the event that his wife predeceased him indicates the testator's intent to treat the Ransburg Children and his step-children proportionately. Under the fall-back provision each of the five children and step-children would receive one-sixth of the residue, and the Menninger Foundation would receive one-sixth. The intent to treat potential residuary beneficiaries proportionately in this contingency supports the inference that proportional treatment should also apply in the event of the testator dying first. Application of the Apportionment Statute would be contrary to such intent.

In making the determination that the Apportionment Statute does not apply to this Will, the Court does not adopt the broader holding sought by the defendant, that is, that any will directing payment of death taxes in a clause preceding formulation of a residuary estate will be construed as making residuary bequests that are reduced ratably by death taxes without regard to apportionment. A tax clause preceding the residuary clause may yet be ambiguous with regard to the apportionment issue, as we believe the tax clause in this Will is. However, read together with the residuary clause in Ransburg's Will, the clear inference here, unlike that in *Pleska*, is that the testator intended for death taxes to be subtracted out before the formulation of the residuary estate.

The Settlement Issue

■ The defendant claims that pursuant to certain treasury regulations limiting marital and charitable deductions the plaintiff has actually underpaid federal estate taxes by approximately $200,000. Treasury Regulation (26 C.F.R.) Section 20.-2056(e)–2(d)(1) which applies to marital deductions, provides the following:

(d) *Will Contests.* (1) If as a result of a controversy involving the decedent's will, or involving any bequest or devise thereunder, his surviving spouse assigns or surrenders a property interest in settlement of the controversy, the interest so assigned or surrendered is not considered as having "passed from the decedent to his surviving spouse."

Section 20.2055–2(d) applies similarly to charitable deductions:

(d) *Payments in compromise.* If a charitable organization assigns or surrenders a part of a transfer to it pursuant to a compromise agreement in settlement of a controversy, the amount so assigned or surrendered is not deductible as a transfer to that charitable organization.

According to the defendant, the distributions of $1 million each to the Ransburg Children constitutes property assigned or surrendered in settlement of a will contest or controversy with the plaintiff; thus, such property must be treated as not having passed to the plaintiff. The marital deduction is therefore reduced, resulting in a deficiency rather than overpayment of taxes.

The basic problem with the defendant's position is that it is premised on there having been a will controversy or contest as contemplated under the regulations. Obviously, there have been various disputes between the Ransburg Children and Lenna Ransburg. However, the cases which defendant cites in support of characterizing this Settlement as resolving a will contest involve questions about the spouse or charity's right to the bequest or devise at issue. *See e.g., United States Trust Co. v. Commissioner of Internal Revenue*, 321 F.2d 908 (2nd Cir.1963), *cert. denied, In re Estate of Davenport v. Commissioner of Internal Revenue*, 376 U.S. 937, 84 S.Ct. 792, 11 L.Ed.2d 658 (1964) (disallowing marital deduction where widow relinquished to step-daughters property left by will in return for step-daughters' agreement to allow probate of another will devis-

**1393**

ing French property to widow); *Citizens & Southern National Bank v. U.S.*, 451 F.2d 221, 223 (5th Cir.1971) (widow informally elected to take a statutory share, then entered agreement with stepson in which she relinquished all "right, title, interest, claim or demand in the entire estate" in exchange for $40,000); *Pastor v. U.S.*, 386 F.Supp. 106 (E.D.N.Y.1974) (widow who contended that antenuptial agreement was void, and that she could claim intestate share worth $137,732.77, settled with children for $33,-750.57).

Here, although the resolution of the apportionment issue necessarily effects the final valuation of bequests in the residuary estate, the parties have never questioned the testator's division of one-half to the widow and one-sixth to each of the children. The plaintiff argues persuasively that the distributions represented her view of what the children should receive under the Will, rather than a concession on the apportionment issue, and indeed, the plaintiff has steadfastly maintained her position as to apportionment. The Court finds that the Settlement Agreement did not result out of a "will controversy" within the meaning of the regulation. Therefore, the defendant's argument that plaintiff has actually underpaid federal taxes, and has no prospect of recovering a refund, is unavailing; accordingly, summary judgment must be denied.

The issues involving additional administrative expenses and real property taxes also remain to be resolved.

### Conclusion

For the foregoing reasons, the Court denies plaintiff's motion for summary judgment, grants defendant's motion for partial summary judgment and denies defendant's motion for complete summary judgment. Finally, the Court denies the plaintiff's motion to strike or disregard certain portions of affidavits and declarations of Charles F. Cremer, Jean Ransburg Olson and Michael Olson, as well as the government's motion to strike portions of the affidavit of Richard R. Gilliom.