**William Lewis FISH, Appellant (Petitioner Below),**

v.

**Eugenia Marylnn CLORE, Appellee (Respondent Below).**

No. 02A03–9010–CV–452.

Court of Appeals of Indiana, Third District.

May 16, 1991.

Rehearing Denied July 10, 1991.

Kenneth M. Waterman, Baker & Daniels, Fort Wayne, for appellant.

Stephen P. Rothberg, Fort Wayne, for appellee.

STATON, Judge.

William Fish appeals an award of attorney fees to his former wife, Eugenia (Fish) Clore. He presents us with the sole issue of whether the trial court erred in awarding attorney fees to a party found to be in willful contempt of court.

We reverse.

On September 30, 1982, the marriage of the parties was dissolved. William and Eugenia agreed to joint legal custody of their two minor children. William was awarded the physical custody of JF, subject to Eugenia's right of visitation; Euge-nia was awarded the physical custody of MF, subject to William's right of visitation.

On April 8, 10, 12 and 15, 1985, the trial court heard evidence on William's Petition for Visitation Rights and Modification of Dissolution Decree, Eugenia's Petition for Modification of Order and the paternal grandparents' Petition for Visitation. On May 14, 1985, the trial court entered Findings of Fact, Conclusions of Law and Judgment, establishing more specific visitation rights for each parent.[1]

On March 11, 1988, William filed a Motion for Rule to Show Cause, alleging that Eugenia continued to impede the exercise of his visitation rights. He additionally filed a Petition to Modify Divorce Decree, requesting that the decree be modified to provide as follows:

1. Petitioner and respondent shall consult together by telephone or correspondence if personal conference is impractical regarding the general health and welfare, education and development of the minor children to the end that, so far as possible, they may adopt a mutually harmonious policy in regard to the children's upbringing.

2. Neither shall attempt, or condone any attempt, directly or indirectly, by any artifice or subterfuge whatsoever, to estrange the children from the other party, or to injure or impair the mutual love and affection of the children.

3. At all times, the parties shall encourage and foster in the children sincere respect and affection for both parties and shall not hamper the natural development of the children's love and respect for the other parent.

4. Each party shall keep the other party advised as to any serious illness or other major developments with respect to each child.

5. Each parent shall be entitled to immediate access from the other or from a third party to records and information pertaining to the minor children

---

1. The trial court's finding of Fact No. 15 provided: "With respect to visitation, the Petitioner has not been allowed to have visitation rights with the child, MF, at reasonable times and places, except during those specific rights, times, and places, specified in the original Dissolution Decree." Record, p. 29.

including, but not limited to, medical, dental, health, school, or educational records.

6. Each of the parties agrees to keep the other party currently advised of the other's residence and business address, telephone numbers, and whereabouts on vacation with the children.

7. Each party shall be entitled to speak to the child in the possession of the other by telephone at reasonable times and intervals when the child is in the control of the other party.

8. The children shall be encouraged to telephone their respective parents.

Record, pp. 32–33.

On November 28, 1989, the trial court ordered each of the foregoing modifications requested by William. Additionally, the trial court found that Eugenia had willfully refused to comply with the court's prior orders regarding visitation. Eugenia was permitted to purge herself of contempt by restoring visitation rights to William and cooperating fully with the monitoring psychologist. Initial visitation was to be more limited than that previously ordered by the court; however, the stated objective of the court's November 28 order was that William was to eventually enjoy the full extent of the visitation previously ordered. Dr. Victor Rebman was appointed by the court to monitor the visitation and recommend, where appropriate, incremental increases in visitation time.

Eugenia was to pay the fees incurred by Dr. Rebman in carrying out the court's directives. Hearing on the matter of attorney fees was deferred until May 1, 1990. At that hearing, the trial court awarded Eugenia attorney fees in the amount of $8,000.00.

■ An award of attorney fees in actions to enforce or modify an order granting or denying visitation rights is governed by IC 31–1–11.5–24, which provides in pertinent part:

"In determining whether to award reasonable attorney's fees, court costs, and other reasonable expenses of litigation, the court may consider among other factors: (1) whether the petitioner sub-stantially prevailed and whether the court found that the respondent knowingly or intentionally violated an order granting or denying rights; and (2) whether the respondent substantially prevailed and the court found that the action was frivolous or vexatious."

This section is discretionary. Therefore, the only inhibition to the trial court's action under the statute is its judicious exercise of discretion. A trial court will be said to have abused its discretion only where its decision was contrary to the logic and effect of the facts and circumstances before the court, or the reasonable, probable, and actual deductions to be drawn therefrom. *Phillips v. Phillips* (1988), Ind.App., 524 N.E.2d 1320, 1323–24.

■ Eugenia persuasively argues that a trial court must consider the resources of the parties, their respective economic conditions and the ability of the parties to engage in gainful employment and to earn adequate income, when making an award of attorney fees. *See Sovern v. Sovern* (1989), Ind.App., 535 N.E.2d 563, 567, *reh. denied.* Testimony at the hearing on May 1, 1990 revealed that William's annual income exceeds $50,000.00 and that Eugenia's annual income is approximately $31,-000.00.

■ However, other evidence produced at the hearing indicated that William's disposable income is significantly affected by necessary expenditures for JF, for whose support William is solely responsible. JF has incurred uninsured psychiatric expenses of approximately $30,000 during custodial care in Rivercare Hospital, Charter Beacon Hospital, Star Commonwealth School and Indiana Boys School. William also assumed liability for uninsured damages to property caused by JF. As of the hearing date, William was paying, pursuant to a court order, $75.00 weekly for JF's support during his detention at Indiana Boys School. William additionally pays $215.00 monthly to Eugenia for the support of MF.

William contends that Eugenia is able to pay her own attorney fees, as she has

regular employment, receives child support, possesses assets and incurs no extraordinary expenses.[2] William further argues that an award of attorney fees to a nonprevailing party who was found to have willfully violated previous court orders, precipitating the instant litigation, exceeds the limits of judicial discretion. We agree.

The trial court was required to consider all the circumstances before it. *Phillips, supra,* at 1324. Clearly, William was the prevailing party, receiving each of the modifications to the divorce decree which he requested. Further, Eugenia willfully and consistently violated prior orders of the court. Lastly, she was not without funds with which to pay attorney fees occasioned because of her continued refusal to comply with court-ordered visitation.

The award of attorney fees to Eugenia is reversed.

GARRARD and BARTEAU, JJ., concur.

---

**2.** Uncontroverted evidence was presented that Eugenia makes no contribution to the medical and psychiatric expenses of JF.